"STGMU PRISONERS":
XAVIAR PAGAN, RONNIE E. JOHNSON,
COURTNEY DUNCAN, KAREEM MAZYCK,
ANGEL MALDONADO, T. MONTANA BELL,
MICHAEL SCULLEN, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,
                    PLAINTIFFS.

            VS.

GEORGE M. LITTLE, ACTING SECRETARY
OF THE PA D.O.C.; JOHN E. WETZEL,
FORMER SECRETARY OF THE PA D.O.C.;
TREVOR WINGARD, WESTERN REGIONAL
FORMER DEPUTY SECRETARY OF THE PA
D.O.C.; AND ERIC ARMEL, SUPER-
INTENDENT @ SCI-FAYETTE (STGMU);
SUED IN THEIR INDIVIDUAL AND OFFI-
CIAL CAPACITIES,
                    DEFENDANTS.

IN THE U.S. DIST. COURT FOR THE
WESTERN DIST. OF PENNSYLVANIA.
CIVIL ACTION NO. 2:22-cv-1516

JURY TRIAL DEMANDED
SUPPLEMENTAL JURISDICTION
CLASS-ACTION

RECEIVED

OCT. 2 7 2022

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

---

## COMPLAINT → CLASS-ACTION

## I. INTRODUCTION:

1. THIS CLASS-ACTION SEEKS TO STOP THE CRUEL AND UNUSUAL PUNISHMENT OF PRISONERS SUFFERING WITH SERIOUS MENTAL ILLNESSES IN PENNSYLVANIA DEPARTMENT OF CORRECTIONS (PA D.O.C.) "SECURITY THREAT GROUP MANAGEMENT UNIT" (STGMU) @ SCI-FAYETTE. THESE MALE PRISONERS ARE CONFINED IN SO-CALLED "SECURITY LEVEL FIVE HOUSING UNITS" (SL5H) OF L-UNIT'S A, B AND D POD, UNDER HORRIFIC CONDITIONS, THROUGH AN UNCONSTITUTIONAL PROCESS THAT TAKES NO ACCOUNT OF — AND EXACERBATES — THEIR MENTAL ILLNESS. DEFENDANTS MIS-TREATMENT OF THESE PRISONERS VIOLATES THEIR FIRST, EIGHTH AND FOURTE-ENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS WELL AS THE AMERICANS WITH DISABILITIES ACT (ADA).

2.   STGMU PRISONERS (PLAINTIFFS) ARE LOCKED IN EXTREMELY SMALL CELLS FOR AT LEAST 23 HOURS A DAY ON WEEKDAYS, IF LUCKY, AND 24 HOURS A DAY ON WEEKENDS AND HOLIDAYS. TYPICALLY, THE LIGHTS ARE ON IN THE CELL ALL THE TIME. STGMU PRISONERS ARE DENIED ADEQUATE MENTAL HEALTH CARE AND PROH-IBITED FROM WORKING, PARTICIPATING IN EDUCATIONAL OR REHABILITATIVE PROG-RAMS, COGNITIVE BEHAVIOR THERAPY, INTERPERSONAL THERAPY, GROUPS, OR ATTEND-ING RELIGIOUS SERVICES. THEY HAVE ONLY THE MOST MINIMAL CONTACT WITH OTHER HUMAN BEINGS, EXCEPT WHEN THEY ARE LUCKY TO BE TAKEN TO THE EXTREMELY SMALL OUTDOOR YARD CAGES, SURROUNDED BY OTHER PRISONERS WHO MAY BE PSYCHO-TIC OR VIOLENT, WHICH CAN BE AS DELETERIOUS TO THEIR MENTAL HEALTH AS SOLITARY CONFINEMENT IN THE STGMU.

3.   STGMU PRISONERS (PLAINTIFFS) ARE DENIED COMPLETE DUE PROCESS, PRIOR AND AFTER SAID ARBITRARY PLACEMENT INTO THE STGMU, WHERE ADEQUATE PROGRAMMING, PRO-GRAM TREATMENT SPECIALIST AND SOCIAL WORKERS FAIL TO EXIST, BUT PLACEMENT IN THE STGMU CONTINUES WITH NO SIGNS OF ENDING. PROLONGED ISOLATION UNDER THESE EX-TREMELY HARSH CONDITIONS EXACERBATES THE SYMPTOMS OF THE STGMU PRISONERS MEN-TAL ILLNESS, WHICH CAN INCLUDE REFUSING TO LEAVE THEIR CELLS, DECLINING MEDICAL TREATMENT, SLEEPLESSNESS, HOPELESSNESS, HALLUCINATIONS, PARANOIA, CONSUMING FOR-EIGN OBJECTS, OVERDOSING ON PILLS, COVERING THEMSELVES WITH FECES, EATING THEIR OWN FECES, HEAD BANGING, CUTTING THEMSELVES, INJURING THEMSELVES AND SUICIDE ATTEMPTS. FREQUENTLY, THESE SYMPTOMS ARE NEGLECTED AND REGARDED AS PRISON RULE INFRACTIONS, WHICH DEFENDANTS PUNISH WITH STILL MORE TIME IN THE STGMU.

4.   THE RESULT IS A DICKENSIAN NIGHTMARE, IN WHICH MANY STGMU PRISONERS, BECAUSE OF THEIR MENTAL ILLNESS, ARE TRAPPED IN AN NEVERENDING CYCLE OF ISOLA-TION AND PUNISHMENT, FURTHER DETERIORATION OF THEIR MENTAL ILLNESS, DEPRIVATION OF ADEQUATE MENTAL TREATMENT, LACK OF ANY PROSPECT OR AVENUES OF RELEASE, AND INABILITY TO QUALIFY FOR PAROLE.

5.   THE DEFENDANTS IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE STGMU'S TREATMENT OF ITS PRISONERS WITH MENTAL ILLNESS, INCLUDING THE PRACTICE OF SEGREGA-TING THEM FOR LONG PERIODS OF TIME IN THE STGMU, CAN CAUSE GRAVE HARM TO THEIR MENTAL AND PHYSICAL HEALTH. YET, THE DEFENDANTS HAS DISPLAYED DELIBERATE INDIFFERENCE TO THE EFFECTS OF THE STGMU'S MISTREATMENT OF ITS PRISONERS. UN-LIKE CORRECTIONAL SYSTEMS AND OFFICIALS IN MANY OTHER STATES, THE DEFENDANTS DOES NOT ADEQUATELY CONSIDER THE STGMU PRISONERS' MENTAL ILLNESS BEFORE FOR-CING THEM INTO THE STGMU, DOES NOT PROVIDE SUFFICIENT HOUSING IN MENTAL HEALTH UNITS (I.E. "SRTU" AND "BMU") DESIGNED ESPECIALLY FOR PRISONERS WITH MENTAL ILLNESS, AND FAILS TO TAKE OTHER REASONABLE MEASURES, WHICH IS OUTLINED IN THEIR MENTAL HEALTH POLICY (I.E. DC-ADM 13.8.1), TO AMELIORATE THE RISK OF SERIOUS HARM TO THE STGMU PRISONERS. DEFENDANTS' DELIBERATE INDIFFERENCE TO THE EFFECTS OF THE DOC'S POLICIES AND PRACTICES ON THE MENTALLY-ILL STGMU PRISONERS SYSTEMICALLY VIOLATES THE EIGHTH AMENDMENT.

6.   PLAINTIFFS (STGMU PRISONERS) SUFFERING FROM QUALIFIED MENTAL ILLNESS AND SUBJECT TO ENDURE PROLONGED SOLITARY CONFINEMENT IN THE CONTINUOUS, NEVER END-ING CYCLE OF THE STGMU, GOVERNED UNDER THE PA D.O.C'S UNKNOWN-MYSTERIOUS

2.

POLICY DC-ADM 6.5.1., WHICH DENIES COMPLETE DUE PROCESS AND WHEN CHALLENGED, WALLS OF RETALIATION AND PUNISHMENT IS ADMINISTERED ON THEM THEREOF. THE STGMU PRISONERS SEEKS AN INJUNCTION REQUIRING THE DEFENDANTS TO CEASE VIOLATING THEIR EIGHTH AMENDMENT RIGHTS; PROVIDE THEM WITH CONSTITUTIONALLY ADEQUATE MENTAL HEALTH CARE; PROTECT THEM AGAINST DANGEROUS AND UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT; AND PROVIDE THEM WITH FUNCTIONAL AVENUES AND PROSPECTS OF RELEASE INTO GENERAL POPULATION.

## II. JURISDICTION AND VENUE:

7.   THIS COURT HAS JURISDICTION OVER THESE CLAIMS PURSUANT TO 28 U.S.C. §§ 1331 AND 1343.  PLAINTIFFS' CLAIMS ARE AUTHORIZED BY 42 U.S.C. § 1983 AND 28 U.S.C. §§ 2201 AND 2202; 42 PA.C.S. § 931(A), 42 PA.C.S. §§ 8521-8528. VENUE IS APPROPRIATE IN THIS DISTRICT PURSUANT TO 28 U.S.C. § 1391 (B) SINCE PLAINTIFFS' ADDRESS AS WELL AS THE DEFENDANTS' SUB-ADDRESS IS LOCATED IN THIS DISTRICT.

## III. PARTIES:

8.   PLAINTIFFS (STGMU PRISONERS): XAVIAR PAGAN # KW-8620, RONNIE E. JOHNSON # DZ-3092, COURTNEY DUNCAN # LZ-8062, KAREEM MAZYCK # NW-3714, ANGEL MALDONADO # HS-6238, T. MONTANA BELL # LD-5447, MICHAEL SCULLEN # KF-6696 AND OTHERS SIMILARLY SITUATED (I.E. 40 OTHER STGMU PRISONERS), ARE A CLASS OF INDIVIDUALS/MALES WHO SUFFER FROM QUALIFIED MENTAL ILLNESS, SUBJECT TO DAILY DETERIORATION DUE TO THE MISTREATMENT OF/BY DEFENDANTS, AND THE CONTINUOUS, HORRIFIC, NEVERENDING ARBITRARY HOUSING IN THE STGMU, LOCATED @ SCI-FAYETTE, 50 OVERLOOK DRIVE, LABELLE, PA 15450.

9.   BEFORE RESORTING TO LITIGATION, PLAINTIFFS SOUGHT TO PUT AN END TO DEFENDANTS' SYSTEMIC CONSTITUTIONAL VIOLATIONS WITHOUT JUDICIAL INTERVENTION, PLAINTIFFS ATTEMPTED SUICIDE, FILED HUNDREDS OF DOCUMENTS, INCLUDING DC-ADM 804 GRIEVANCES AND DC-135A REQUEST TO STAFF MEMBERS IN THE ATTEMPT TO EXHAUST THEIR ADMINISTRATIVE REMEDIES, BUT RECEIVED UNFAVORABLE RESPONSES OF DENIALS ON EVERY STAGE. SUCH FILINGS WERE MET WITH RETALIATION, BARRING THEM FROM FURTHER FILINGS. PLAINTIFFS WRITTEN NUMEROUS LETTERS TO DEFENDANTS' CENTRAL OFFICE, COMPLAINING AND CRYING OUT FOR HELP CONCERNING THE FOREGOING, BUT TO NO AVAIL. DESPITE THESE INTENSIVE EFFORTS, AND DAILY CALLS FROM THE PLAINTIFFS' FAMILIES AND FRIENDS, THE DEFENDANTS HAVE PERSISTED IN THEIR UNCONSTITUTIONAL AND UNLAWFUL POLICIES AND PRACTICES.

10.  DEFENDANTS: GEORGE M. LITTLE, IS THE ACTING PA.D.O.C'S SECRETARY, JOHN E. WETZEL, IS THE FORMER PA.D.O.C'S SECRETARY; BOTH IS/WAS RESPONSIBLE FOR THE OVERALL OVERSIGHT, OPERATION, AND ADMINISTRATION OF THE COMMONWEALTH'S CORRECTIONAL SYSTEM. TREVOR WINGARD, WESTERN REGIONAL FORMER DEPUTY SECRETARY OF PA.D.O.C. AND ERIC ARMEL, SUPERINTENDENT @ SCI-FAYETTE AND OVERSEES THE STGMU'S DAILY OPERATION. SAID DEFENDANTS MAINTAINS A ADDRESS AT THEIR PRINCIPLE OFFICE: 1920 TECHNOLOGY PARKWAY, MECHANICSBURG, PA 17050.

# IV. FACTS OF THE CASE:

"A". (STGMU PRISONERS TO EXTREME ISOLATION AND DANGER - GROSSLY INADEQUATE MENTAL HEALTH CARE, DENIALS OF DUE PROCESS AND SUBJECTED TO HARSH CONDITIONS THEREOF, CRUEL & UNUSUAL.)

**11.** AS OF JULY 16, 2022, APPROXIMATELY 40 TO 50 MEN DIAGNOSED WITH MENTAL ILLNESS WERE CONFINED TO THE STGMU AT SCI-FAYETTE, WITHOUT DUE PROCESS, ADEQUATE MENTAL HEALTH CARE (AMHC), COGNITIVE BEHAVIORAL THERAPY (CBT) AND AVENUES OR PROSPECTS OF RELEASE. PRISONERS DIAGNOSED WITH MENTAL ILLNESS ARE DISPROPORTIONATELY REPRESENTED IN THE STGMU. PRIOR TO STGMU PLACEMENT, AND AFTER SUCH, THEY WERE DENIED PSYCH EVALUATIONS TO DETERMINE IF THEY ARE MENTALLY STABLE TO FUNCTION AND ENDURE EXTREME ISOLATION. THESE PRISONERS ARE C-CODES OF DEFENDANTS DISTABILITY RATING SYSTEM, WHICH REFLECTS FINDINGS THAT THEY HAVE MENTAL ILLNESS THAT IS ACTIVE. SOME ARE C-CODES WHO WERE STRIPPED OF THEIR D-CODES OR C-CODES FLIRTING WITH A D-CODE.

**12.** STGMU PRISONERS ARE PLACED IN THE STGMU IN EITHER DISCIPLINARY CUSTODY (D/C) OR ADMINISTRATIVE CUSTODY (A/C). WHETHER D/C OR A/C, STGMU PRISONERS ARE PLACED IN PHASE 5 OF THE STGMU ON L-A POD, LOCKED IN SINGLE CELLS, AS SMALL AS 80 SQUARE FEET, FOR AT LEAST 23 HOURS A DAY DURING THE WEEK AND 24 HOURS A DAY DURING THE WEEKENDS AND HOLIDAYS. STGMU CELL DOORS ARE GENERALLY MADE OF SOLID STEEL AND HAVE ONLY A SMALL SLOT, THROUGH WHICH FOOD CAN BE PASSED OR PRISONERS HANDCUFFED, AND A SMALL WINDOW, WHICH ALLOWS ONLY A CONSTRICTED VIEW OF THE REST OF THE CELL-BLOCK. SOME CELLS ALSO HAVE A TINY WINDOW TO THE OUTSIDE, WHICH LETS IN LITTLE IF ANY NATURAL LIGHT. THE CELLS HAVE NO FRESH AIR.

13. STGMU CELLS HAVE MINIMAL FURNITURE, GENERALLY A BED, THIN MATTRESS (NO PILLOW), COMBINATION SINK-TOILET, AND SMALL DESK AND CHAIR. THE CONCRETE WALLS AND FLOORS OF THE STGMU CELLS CAN BECOME SCORCHING HOT IN THE SUMMER. IN THE WINTER, HEATING IS INEFFECTIVE OR NON-EXISTENT.

14. ON WEEKDAYS, STGMU PRISONERS ARE ALLOWED ONLY ONE HOUR PER DAY TO EXERCISE, OFTEN IN SOLITUDE, IN SMALL OUTDOOR CAGES, SURROUNDED BY PSYCHOTIC OR VIOLENT PEERS AND GUARDS, WHICH CAN BE AT LEAST AS DEVASTATING TO THEIR MENTAL WELL-BEING AS SOLITARY CONFINEMENT. SOME STGMU PRISONERS OFTEN DO NOT TAKE THE OPPORTUNITY TO EXERCISE BECAUSE OF THEIR SYMPTOMS, SUCH AS UNREASONABLE FEAR, SEVERE DEPRESSION, OR INABILITY TO BE READY TO GO TO THE EXERCISE CAGES WHEN ORDERED BY STAFF. MANY DO NOT LEAVE THEIR CELLS FOR WEEKS OR MONTHS.

15. STGMU PRISONERS ARE PERMITTED THREE (3) SHOWERS PER WEEK. AGAIN, BECAUSE OF MENTAL ILLNESS, MANY PRISONERS REFUSE SHOWERS FOR DAYS, WEEKS AND MONTHS.

16. STGMU PRISONERS MUST EAT EVERY MEAL IN THEIR CELLS.

17. THE LIGHTS IN ALL THE STGMU CELLS ARE KEPT ON AROUND THE CLOCK, MAKING SLEEP DIFFICULT AND DISORIENTING PRISONERS AS TO TIME. PRISON GUARDS

STRIP SEARCH AND HANDCUFF/SHACKLE STGMU PRISONERS, AND AT TIMES SHACKLE THEIR FEET AND LEGS, BEFORE ALLOWING THEM TO STEP OUT OF THEIR CELLS FOR ANY ESCORT/MOVEMENT. STGMU PODS ARE EXTREMELY LOUD, WITH BANGING CELL DOORS, AND SCREAMING, HALLUCINATING PRISONERS. TO SPEAK TO SOMEONE IN A NEARBY CELL, PRISONERS MUST YELL THROUGH THEIR FOOD SLOT OR THE CRACKS BETWEEN THEIR CELL DOORS AND FRAMES. GUARDS PUNISH PRISONERS WHO ATTEMPT TO COMMUNICATE WITH EACH OTHER QUIETLY BY THROWING PAPER POLES TIED TO STRINGS UNDER THEIR CELL DOORS (PHISHING). SUCH "PHISHING" IS DEEMED A DISCIPLINARY VIOLATION AND TYPICALLY RESULTS IN INCREASED TIME IN THEIR STGMU PHASE.

18. STGMU PRISONERS ARE BARRED FROM RELIGIOUS SERVICES, CANNOT HOLD A PRISON JOB, OR PARTICIPATE IN THERAPEUTIC OR EDUCATIONAL GROUPS/PROGRAMS. NOR CAN THEY TAKE ADVANTAGE OF REHABILITATION SERVICES FOR ALCOHOL AND DRUG ADDICTION, VIOLENCE PREVENTION, SUICIDE PREVENTION, CRIMINAL THINKING, DOMESTIC VIOLENCE, AND VICTIM AWARENESS. IN MANY INSTANCES, THESE SERVICES ARE PREREQUISITES FOR PAROLE.

19. STGMU PRISONERS ARE ALLOWED ONLY NON-CONTACT VISITS, DURING WHICH THEY ARE SEPARATED FROM THEIR VISITORS BY A VIDEO MONITOR AND MUST SPEAK THROUGH A TELEPHONE THAT CONNECTS TO THE MONITOR (I.E. VIRTUAL/ZOOM VISIT). SOMETIMES THE PRISONER'S HANDCUFFS AND SHACKLES ARE NOT REMOVED, WHICH MAKES IT HARD TO HOLD THE TELEPHONE AND GET COMFORTABLE. VISITS ARE ONLY 45 MINUTES. STGMU PRISONERS ON D/C AND A/C ALIKE, OF PHASE 5, ARE PERMITTED ONE VISIT PER MONTH WITH IMMEDIATE FAMILY ONLY. A/C PHASE 4 ARE PERMITTED TWO VISITS PER MONTH. A/C PHASE 3 AND 2 ARE PERMITTED UP TO 3 TO 4 VISITS PER MONTH. PHASE 5 OF THE STGMU IS A PUNITIVE STATUS, NO MATTER IF ONE IS D/C OR A/C. FOR STGMU PRISONERS OF PHASE 5, ON D/C OR A/C, ACCESS TO TELEPHONES, READING MATERIAL, RADIOS, TELEVISIONS, COMMISSARY FOOD, LAW LIBRARY AND DAYROOM DO NOT EXIST.

20. STGMU PRISONERS RECEIVE GROSSLY INADEQUATE MENTAL HEALTH TREATMENT OR NONE AT ALL. CONTACTS WITH MENTAL HEALTH STAFF OCCUR, AT BEST, INFREQUENTLY. TYPICALLY THE STAFF STANDS OUTSIDE THE CELL AND SPEAKS TO THE PRISONERS THROUGH THE FOOD SLOT OR THE CRACK BETWEEN THE SIDE OF THE CELL DOOR AND FRAME, SUCH VISITS, WHICH OFTEN LAST NO MORE THAN A FEW SECONDS, DO NOT CONSTITUTE MEANINGFUL MENTAL HEALTH TREATMENT. BECAUSE OF THE COMPLETE LACK OF PRIVACY AND CONFIDENTIALITY, MANY PRISONERS REFUSE TO SPEAK TO MENTAL HEALTH STAFF. OTHERS ARE SO DEBILITATED BY THEIR MENTAL ILLNESS THAT THEY ARE INCAPABLE OF MEANINGFUL INTERACTION WITH MENTAL HEALTH STAFF DURING THESE "DRIVE BY" VISITS. IN ADDITION, MANY STGMU PRISONERS SUFFERING FROM MENTAL ILLNESS REQUIRE PSYCHOSOCIAL REHABILITATION SERVICES AS PART OF THEIR TREATMENT, SUCH AS STRUCTURED OUT-OF-CELL ACTIVITIES DESIGNED TO DECREASE ISOLATION, INCREASE SOCIAL INTERACTION, INCREASE TREATMENT AND MEDICATION COMPLIANCE, AND DECREASE PSYCHIATRIC SYMPTOMS. THESE SERVICES ARE NOT AVAILABLE IN THE STGMU.

21. TYPICALLY, BEFORE AND AFTER PLAINTIFFS STGMU PLACEMENT, DEFENDANTS (ALL) ARBITRARILY APPROVE AND SIGNED OFF ON STGMU RECOMMENDATION FROM THEIR SUBORDINATES, WHO FAIL TO GIVE NOTICE OF THEIR RECOMMENDATION AND REASON FOR SUCH, NO EXPLAINATION IN ANY RATIONALE, WITHOUT ANY PSYCH EVALUATIONS PERFORMED. SUCH ROUTINE PRACTICE IS CONTRARY TO PA. D.O.C'S POLICIES, AMONGST

DUE PROCESS STANDARDS.

22. IN ADDITION, SAID DEFENDANTS AND THEIR SUBORDINATES, PLAY A MAJOR ROLL IN THIS NIGHTMARE. WHERE MANY OF THE PLAINTIFFS NEVER RECEIVED A COPY OF A DC-141, PART 4 RATIONALE; EXPLAINING THE RATIONALE BEHIND THE STGMU RECOMMENDATION AND FEW WHO HAVE, THEIRS LACK ANY EVIDENCE, PROOF OR FACT THEREOF; IN VIOLATION OF DC-ADM 802, SEC. 2 (D)(8) OF PA.D.O.C. POLICY (ADMINISTRATIVE CUSTODY - A/C). WITHOUT THIS RATIONALE AND EXPLANATION OF STGMU PLACEMENT, PLAINTIFFS ARE LEFT LOST, CONFUSED, OBLIVIOUS AND CANNOT EFFECTIVELY APPEAL THE DECISION.

23. IN FACT, WHEN PLAINTIFFS REQUEST FOR THEIR DC-141, PART 4 RATIONALE, DEFENDANTS SUBORDINATES FAIL TO FURNISH IT, WITH EXCUSES OF: "WE DONT HAVE IT" OR "WRITE THE PRISON/FACILITY THAT SENT YOU". WHERE PLAINTIFFS NEVER RECEIVE ANY RESPONSE WHEN THEY DO WRITE THEIR SENDING FACILITY. WITH THAT BEING SAID, PLAINTIFFS AT NO TIME WAS INFORMED, IN WRITING OR ORALLY OF THE REASONS FOR STGMU RECOMMENDATION/PLACEMENT. PLAINTIFFS WAS NEVER AFFORDED THE OPPORTUNITY TO RESPOND IN WRITING TO THE RATIONALE. DUE TO THE ABSENCE THEREOF AND THEREFORE BARRED FROM ANY OPPORTUNITY TO OBJECT TO STGMU PLACEMENT. ALL OF WHICH IS IN COMPLETE VIOLATION AND CONTRARY TO DUE PROCESS STANDARDS.

24. DEFENDANTS FAILED TO PROVIDE PLAINTIFFS ANY DUE PROCESS WHATSOEVER IN REGARD TO THE "SECURITY THREAT GROUP (STG) VALIDATION" AND IT'S SO-CALLED PROCESS. DEFENDANTS NEVER INFORMED, NOR PROVIDED ANY NOTICE THAT PLAINTIFFS WAS LABLED AS A STG MEMBER; EVEN THOUGH SUCH SO-CALLED STG VALIDATION IS A PREREQUISITE/CRITERIA FOR STGMU PLACEMENT (I.E. NO STG VALIDATION - NO STGMU PLACEMENT). DEFENDANTS NEVER PROVIDED A HEARING OR A INTERVIEW/PROCESS, THAT PLAINTIFFS WAS ALLOWED TO PARTAKE IN, TO VALIDATE THEIR SO-CALLED STG AFFILIATIONS. DEFENDANTS NEVER PRESENTED PLAINTIFFS WITH ANY FACTS OR EVIDENCE TO SUBSTANTIATE SUCH STG VALIDATION, NOR ANY OPPORTUNITY TO CHALLENGE SUCH FACTS OR EVIDENCE.

25. DEFENDANTS NEVER CONFISCATED FROM PLAINTIFFS POSSESSION, ANY STG RELATED MATERIALS, LITERATURE, PHOTOS, GRAFFITI, ETC. DEFENDANTS NEVER REVOKED PLAINTIFFS PHONE, KIOSK-EMAIL, MAIL, NOR VISITATION PRIVILEGES FOR ANY STG RELATED COMMUNICATIONS BEFORE OR AFTER SO-CALLED STG VALIDATION AND STGMU PLACEMENT. DEFENDANTS HAS NEVER BEEN PROVIDED WITH ANY INFORMATION FROM AN OUTSIDE GOVERNMENT AGENCY THAT SHOWS OR STATES THAT PLAINTIFFS ARE VALIDATED STG MEMBERS. PLAINTIFFS IS UNAWARE OF EVER BEING UNDER ANY INVESTIGATION OR ANY INTERNAL D.O.C. REPORTS THAT WERE BASED ON DETERMINING OR SUBSTANTIATING WHETHER THEY WERE/WAS OR SHOULD BE VALIDATED STG MEMBERS.

26. PLAINTIFFS ASSERTS THEY ARE UNAWARE OF WHAT PROCESS AND/OR EVIDENCE DEFENDANTS USED OR ARE ALLOWED TO USE TO VALIDATE THEM AS STG MEMBERS, BECAUSE THERE IS NO D.O.C. POLICY, REGULATIONS OR HANDBOOK ETC. THAT THEY CAN REVIEW THAT DESCRIBES/DETAILS THE STG VALIDATION PROCESS OR PROCEDURES. PLAINTIFFS CLEARLY WAS ARBITRARILY VALIDATED AS STG MEMBERS WITHOUT EVEN THE SLIGHTEST BIT OF DUE PROCESS WHEN THERE IS NO PROCESS IN PLACE TO SPEAK OF. THEY WAS ARBITRARILY AND UNCONSTITUTIONALLY AND SECRETLY LABLED AS STG MEMBERS AND AS A CONSEQUENCE OF SAID VALIDATION, AUTOMATICALLY ELIGIBLE FOR PLACEMENT INTO THE STGMU, WHICH IS A 18 MONTH SLSHU "SO-CALLED PROGRAM" THAT STRIPS PRISONERS OF ALL THEIR LIBERTIES AND PLACES THEM UNDER CONDITIONS THAT CREATES AN ATYPICAL AND SIGNIFICANT HARDSHIP IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE.

6.

27. Unlike all other forms of SLSHU's, such as regular RHU D/C and A/C and Restricted Release List (RRL) which are all governed by either DC-ADM 802 (A/C) and 801 (D/C) for example, and Secure Residential Treatment Unit (SRTU) and the Behavior Management Unit (BMU) which are both governed by the DC-ADM 13.8.1 Policy. The STGMU is governed by the DC-ADM 6.5.1 Policy exclusively. But this secret-mysterious policy is not allowed to be viewed by STGMU prisoners or the public. With that said, Due Process is warranted. Plaintiffs asserts that prisoners in any other form of SLSHU's can view the policy that governs their confinement/placement, conditions, privileges, restrictions, etc. Yet, Plaintiffs in the STGMU cannot. In fact the STGMU is not mentioned in detail within DC-ADM 801, 802, or 13.8.1 policies at all, if any. The criteria for RRL, A/C, D/C, SRTU and BMU can be viewed in a policy's provided to prisoners. Not so with the criteria for the STGMU.

28. The Plaintiffs have been recommended, and arbitrarily placed in the STGMU without any access or viewing of its policy that governs their placement, denying them the information needed to adequately understand or challenge their placement, which violates their Due Process and ultimately poses harm and deterioration of their mental health.

29. No matter D/C or A/C, Plaintiffs privileges are stripped when placed in the STGMU and put on Phase 5, which is a Defacto Punitive Status Confinement. Its privileges and restrictions are indistinguishable from D/C status in every way except, it was enforced on the Plaintiffs without Due Process, thats afforded to prisoners who are actually on D/C status. Being on Phase 5 is the only way one who is on A/C status will be confined as if on D/C status. No other prisoners in the Ph.D.O.C. custody on A/C is denied all A/C privileges like the Plaintiffs are. RRL, IMU, SRTU, BMU, etc., all obtain atleast some, if not all their A/C privileges, unlike Phase 5 STGMU prisoners, who lose all of them, in violation of Title 37 PA. Admin. Code. §93.11 (E) and DC-ADM 802, Sec. 3 (A). Such creates an atypical and significant hardship in relation to the ordinary incidents of prison life.

30. In tandem with the Defendants neglect of the Plaintiffs mental health, arbitrary recommendation and placement, stripping of phone, kiosk-email, tablet/radio, television, commissary, food, etc., of A/C privileges and subjected to a Defacto Punitive Status (i.e. Phase 5) upon initial placement in the STGMU and the lack of treatment/programming, absence of a treatment program specialist and social worker, including STGMU Phase 5 L-A pod being symbolic to the "Amityville Horror House". The Defendants instituted, promoted and wheel barrowed Plaintiffs into the STGMU, knowing that program operation was not/is not in effect, but still continue to warehouse them as if they are imported inventory stocked on shelves. When Plaintiffs inquire into why or when the program would begin, Defendants and their subordinates reply: "Once Covid-19 is over", and the like, surmounting to Due Process violations, and the like.

## "B" (STGMU placement devastate prisoners with mental illness)

31. Abundant psychiatric literature spanning nearly 200 years has documented the severely deleterious effects of isolation on mental health. Isolation is predictably damaging to prisoners with pre-existing mental illness. It poses a grave risk of exacerbation of mental health symptoms, such as massive anxiety and panic attacks, hypersensitivity, difficulty with concentration and memory, insomnia, compulsiveness, uncontrollable rage, acute delusional states, social withdrawal, hopelessness, hallucinations, and paranoia. Deprived of the social interaction essential to keep them grounded in reality. Many prisoners with mental illness experience catastrophic and often irreversible psychiatric deterioration, causing significant psychological pain.

32. The National Commission on Correctional Health Care's 2008 Standards For Mental Health Services In Correctional Facilities (NCCHC Standards) directs that "Prisoners who are

7.

MENTAL ILL SHOULD NOT BE CONFINED UNDER CONDITIONS OF EXTREME ISOLATION." SIMILARLY, THE AMERICAN PSYCHIATRIC ASSOCIATION (APA), IN IT'S POSITION STATEMENT ON SEGREGATION OF PRISONERS WITH MENTAL ILLNESS, FOUND THAT PROLONGED SEGREGATION SHOULD BE AVOIDED FOR PRISONERS WITH MENTAL ILLNESS DUE TO THE POTENTIAL FOR HARM TO SUCH PRISONERS. THE APA DEFINED "PROLONGED SEGREGATION" GENERALLY AS SEGREGATION WITH A DURATION OF GREATER THAN THREE TO FOUR WEEKS. MENTAL ILL PRISONERS LANGUISH IN PA. D.O.C'S STGMU, HOWEVER, FOR YEARS AT A TIME, DUE TO ITS NEVER-ENDING CYCLE OF WAREHOUSING BY THE DEFENDANTS.

33. THE MENTAL DETERIORATION OF THE PLAINTIFFS MANIFESTS ITSELF IN MANY WAYS. THEY OFTEN REFUSE TO LEAVE THEIR CELLS FOR EXERCISE, SHOWERS, OR EVEN TO MEET WITH DEFENDANTS AND MENTAL HEALTH STAFF, EITHER OUT OF UNREASONABLE FEAR OR DEPRESSION, SOME REFUSE THEIR PSYCHOTROPIC MEDICATIONS. MANY SUFFER SUICIDAL THOUGHTS, AND SOME REPEATEDLY CUT OR TRY TO HANG THEMSELVES. SOME SWALLOW RAZORS OR OTHER OBJECTS. PARANOIA IS RAMPANT. SOME ARE AFRAID TO SLEEP DUE TO UNREASONABLE FEAR OF ATTACK. SOME PLAINTIFFS SUFFER FROM THE ONSET OR INCREASING EPISODES OF PSYCHOSIS, A DEBILITATING DISORDER MARKED BY A LOSS OF CONTACT WITH REALITY AND DISORGANIZED THINKING. SOME ARE SO PSYCHOTIC THAT THEY SUFFER FROM HALLUCINATIONS, PARANOIA, DELUSIONAL BELIEFS, AND BIZARRE BEHAVIORS.

34. NOT UNCOMMONLY, L-A AND L-B PODS OF THE STGMU ARE FILLED WITH THE SMELL OF FECES. SOME PLAINTIFFS NEGLECT TO BATHE OR LIE IN THEIR BEDS MOST OF THE DAY. AT TIMES, THESE AND OTHER MANIFESTATIONS OF MENTAL ILLNESS RESULT IN DISCIPLINARY SANCTIONS RATHER THAN APPROPRIATE MENTAL HEALTH CARE. PREDICTABLY, AS THEIR MENTAL ILLNESS IS EXACERBATED BY THE CONDITIONS IN THE STGMU, MANY PLAINTIFFS ENGAGE IN FURTHER CONDUCT DEEMED TO BE DISCIPLINARY INFRACTIONS THAT RESULT IN LONGER STAYS IN STGMU PHASES OR EVEN PHASE SET BACKS. FOR EXAMPLE, DEFENDANTS STGMU SUBORDINATES "PHASE FREEZE" THEM OR SET BACK BECAUSE THEY FAIL TO "CALM DOWN" OR STOP BANGING THEIR HEAD AGAINST CELL DOORS OR THEIR CELL WALL, USE OBSCENE LANGUAGE, USE OF FOREIGN LANGUAGES OR SLANG TALK, FAIL OR REFUSE TO MEET WITH THEM, ETC. SYMPTOMS OF MENTAL ILLNESS — SUCH AS SUICIDAL GESTURES OR REFUSAL TO TAKE MEDICATION — ARE OFTEN CHARACTERIZED AS REFUSALS TO OBEY ORDERS. THE PLAINTIFFS ARE SUBJECT TO AN OFTEN ENDLESS CYCLE IN WHICH THEIR ISOLATION WORSENS THEIR MENTAL ILLNESS, WHICH CAUSES THEM TO NEGLECT OR DISOBEY ORDERS, WHERE SOME OF THE PLAINTIFFS BEEN EXCESSIVELY OC SPRAYED AND ASSAULTED BY STGMU GUARDS, WHILE EXPERIENCING A PSYCHOTIC EPISODE OR SUICIDE ATTEMPT, LEADING TO EVEN LONGER PERIODS OF ISOLATION, WHICH CONTINUES THE CYCLE.

25. PLAINTIFFS IN THE STGMU ALSO, ON AVERAGE, SERVE MUCH LONGER SENTENCES THAN OTHER PRISONERS. AS NOTED ABOVE, THEY CANNOT ACCESS PROGRAMS REQUIRED TO BE ELIGIBLE FOR PAROLE. IN ADDITION, THESE PLAINTIFFS ARE OFTEN VIEWED AS DISCIPLINARY PROBLEMS AND THEREFORE ARE UNLIKELY TO BE CONSIDERED FOR PAROLE BEFORE THE EXPIRATION OF THEIR MAXIMUM SENTENCES.

"C"    DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE
       IMPACT OF THE STGMU ON THE PLAINTIFFS AND INSTEAD OF BUILD-
       ING BRIDGES OF MENTAL HEALTH TREATMENT, THEY PUT UP WALLS OF RETALIATION

36. THE DEFENDANTS HAS BEEN AND CONTINUES TO BE DELIBERATELY INDIFFERENT TO THE EFFECTS OF D.O.C. POLICIES AND PRACTICES WITH RESPECT TO THE STGMU ON THE WELL-BEING OF THE PLAINTIFFS AND THEIR MENTAL ILLNESS. THE DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THESE EFFECTS THROUGH NUMEROUS COMMUNICATIONS BY PHONE BETWEEN SOME PLAINTIFFS FAMILY, FRIENDS AND PA PRISON SOCIETY, AND VARIOUS HIGH-LEVEL D.O.C. STAFF. TOP TO BOTTOM COMMUNIQUE.

37. THE DEFENDANTS ALSO KNOWS OR IS DELIBERATELY INDIFFERENT TO THESE EFFECTS THROUGH HUNDREDS OF GRIEVANCES AND REQUEST SLIPS FILED BY VARIOUS PLAINTIFFS REGARDING THE STGMU AND ACCESS TO MENTAL HEALTH SERVICES AND THE LIKE. PLAINTIFFS OF STGMU L-A POD (I.E. "AMITYVILLE HORROR HOUSE") WERE RETALIATED UPON BY DEFENDANT ARMEL AND HIS SUBORDINATES: SCOTT RIDDLE AND TINA WALKER, WITH 3 DAYS OF STARVATION, SABOTAGING GRIEVANCE FILINGS AND THREATS OF LONGER STARVATION. THE DEFENDANTS FURTHER KNOWS OR IS AWARE OF ALLEGATIONS THAT THE PLAINTIFFS ARE ENDURING RETALIATION AND HAVE WRITTEN PA.D.O.C'S CENTRAL OFFICE, COMPLAINING OF SUCH, ALONG WITH

ALLEGATIONS THAT THEY HAVE BEEN SUBJECTED TO EXCESSIVE PERIODS OF ISOLATION, CAUSING FURTHER HARM TO THEIR MENTAL HEALTH, SINCE THE UNITED STATES DEPARTMENT OF JUSTICE HAS REOPENED AN INVESTIGATION ON NEVER ENDING FORMS OF ISOLATION IN PA. D.O.C. IN 2021.

38.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE MENTALLY ILL PLAINTIFFS ARE HELD IN THE STGMU IN SOLITARY CONFINEMENT AND FOR LONG PERIODS OF TIME.

39.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE LIMITED CON-TACTS WITH MENTAL HEALTH PROFESSIONALS IN THE STGMU ARE GROSSLY INSUFFICIENT TO TREAT PLAINTIFFS MENTAL ILLNESS AND THAT SUCH DEFICIENCY IN PROFESSIONAL CARE RE-SULTS IN FUTURE/FURTHER DETERIORATION OF THEIR MENTAL HEALTH, AND EVEN SUICIDE.

40.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT ISOLATED CONFI-NEMENT, OR CONFINEMENT WITHOUT SOME FORM OF OUT-OF-CELL STRUCTURED PROGRAMMING, GROUP AND TREATMENT, EXACERBATES THE SYMPTOMS OF MENTAL ILLNESS FOR MANY PLAINTIFFS AND RESULTS IN FURTHER DETERIORATION OF THEIR MENTAL HEALTH, WHICH CAN LEAD TO SUICIDE.

41.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE D.O.C. HAS FAILED TO TAKE ADEQUATE STEPS TO ENSURE THAT THE MENTALLY ILL PLAINTIFFS WHO EXPRESS SUICIDAL THOUGHTS OR ATTEMPT SUICIDE ARE NOT PLACED IN SOLITARY CONFINEMENT FOR ANY SIGNIFICANT LENGTH OF TIME.

42.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THERE IS NO TRE-ATMENT PROGRAM SPECIALIST, SOCIAL WORKER OR ANY OPERATIONAL PROGRAM COMMENCED IN THE STGMU, BUT STILL CONTINUE TO WAREHOUSE THE PLAINTIFFS AS IF SUCH EXIST, FURTHER CAUSING THEM DETERIORATION OF THEIR MENTAL HEALTH.

43.   DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE ~~GROSS~~ MEN-TALLY ILL PLAINTIFFS IN THE STGMU SUFFER GRIEVOUSLY WITHOUT ADEQUATE MEDICAL TREATMENT.

"O"   PLAINTIFFS REPRESENTATIVE CASUALTIES OF DEFENDANTS UNCONSTITUTIONAL POLICIES, PRACTICES, MISTREATMENT AND ARBIT-RARY HOUSING IN SCI-FAYETTE'S STGMU- AMITYVILLE HORROR HOUSE

44.   AS OF JULY 16, 2022, APPROXIMATELY 40 TO 50 PRISONERS ARE WAREHOUSED IN THE STGMU, AND MORE THAN 3/4 THS (THREE-FOURTHS) ARE SUFFERING FROM SERIOUS MENTAL ILLNESS. WHILE ALL OF THESE MEN ARE SUFFERING AS A RESULT OF THE DEFENDANTS' UN-CONSTITUTIONAL POLICIES, PRACTICES, MISTREATMENT AND ARBITRARY HOUSING, IT IS DETAILED BELOW, THE EXPERIENCES OF THE NAMED PLAINTIFFS TO ILLUSTRATE THE PROBLEM.

1.   XAVIER PAGAN- (32 YEAR OLD HISPANIC-PUERTO RICAN- MALE AND SPIRITUAL)

45.   PRIOR TO WAREHOUSING IN THE STGMU, MR. PAGAN WAS DIAGNOSED WITH ANXIETY, PTSD, EXTREME DEPRESSION, SCHIZOPHRENIA AND HALLUCINATIONS IN 2019, AT SCI-CAMPHILL, WHICH LED TO HIM TRYING TO COMMIT SUICIDE. INSTEAD OF DEFENDANTS MAKING MR. PAGAN A "D" CODE, IN REFLECTION OF THE SERIOUS NEED FOR MENTAL HEALTH SERVICES, THEY SETTLED ON A "C" CODE. WHILE IN THE RHU SERVING A 15 DAY D/C SANCTION, SAID DEFENDANTS RECOMM-ENDED AND APPROVED MR. PAGAN TO BE ARBITRARILY PLACED IN THE STGMU WITHOUT AFFORDING HIM NOTICE, INTERVIEW, VALIDATION HEARING OR PSYCH EVALUATION, KNOWING FULL-WELL HE IS MENTALLY ILL AND SUPPOSE TO BE HOUSED IN THE MHU (MENTAL HEALTH UNIT) INSTEAD.

46.   FULLY KNOWING THAT THE STGMU WAS/IS INOPERABLE DUE TO THE COVID-19 PANDEMIC CRISIS DEFENDANTS ACCEPTED MR. PAGAN INTO THE STGMU BETWEEN OCTOBER 2020 AND DECEMBER 2020. KNOWING FULL-WELL THAT THE STGMU DO NOT OFFER INTENSIVE TREATMENT SERVICES, 20 HOURS OF WEEKLY OUT-OF-CELL TIME, PROGRAMMING AND GROUP THERAPY, DEFENDANTS FAILED TO TAKE INTO ACCOUNT MR. PAGAN'S

MENTAL HEALTH.

47. UPON ENTRY INTO THE STGMU, MR. PAGAN, AS A/C, WAS IMMEDIATELY STRIPPED OF HIS A/C PRIVILEGES AND PLACED ON PHASE 5 (I.E. D/C-PUNITIVE), CAUSING HIM TO PANIC AND EXPLODE WITH LOUD OUT BURST OF FRUSTRATION AND ERRATIC BEHAVIOR, DEFENDANTS NEGLECTED SUCH AS A TEMPER TANTRUM AND PLACED HIM IN A HARD CELL THAT WAS EXTREMELY COLD, AS PUNISHMENT.

48. OVER TIME THROUGHOUT HIS ARBITRARY PLACEMENT, MR. PAGAN BEGIN TO MENTALLY DETERIORATE, DUE TO BEING CONFINED IN HIS CELL ALL DAY WITHOUT ANY PROGRAM TREATMENT. HE BEGIN TO BANG ON HIS DOOR, TABLE, BUNK AND SINK EVERYDAY TO GET THE DEFENDANTS TO ENTER THE POD SO HE COULD CONVINCE THEM TO START THE PROGRAM, DEFENDANTS AND THEIR SUBORDINATES WOULD TELL HIM TO BE QUIET AND BE PATIENT, BUT NEVER PROVIDED MR. PAGAN ANY TREATMENT WHAT-SOEVER. DEFENDANTS @ PSYCH DR. SAAVEDRA WOULD CHANGE OR BOOST HIS MEDICATION UP ONLY TO KEEP HIM SLEEP OR HIGH ALL DAY.

49. MR. PAGAN WAS SET BACK AND PHASE FREEZED NUMEROUS TIMES BY DEFENDANTS AND THEIR SUBORDINATES, INTENTIONALLY PROLONGING HIS STGMU PLACEMENT, ULTIMATELY CAUSING HIM TO BECOME HOPELESS OF EVER BEING RELEASED. FOR EVERY SETBACK AND PHASE FREEZE, MR. PAGAN FILED NUMEROUS GRIEVANCES ON THE DEFENDANTS AND THEIR SUBOR-DINATES, WHEREAS THE DEFENDANTS RETALIATED BY PROPERTY DEPRIVATION, ASSAULT AND BATTERY, AND THREATS OF INDEFINATE ISOLATION, IN THEIR SUCCESSFUL ATTEMPT TO BREAK MR. PAGAN.

50. AS OF JULY 16, 2022, AND AFTER 20 MONTHS OF PSYCHOLOGICAL AND PHYSICAL TORTURE, MR. PAGAN FINALLY "SNAPPED OUT". HE BEGIN CURSING EVERYONE, FRIENDS, PEERS AND STAFF, IN EYE SIGHT. HE BEGIN TO FLOOD HIS CELL WITH CONTAMINATED TOILET WATER, KNEE HIGH. HE BEGIN TO PUNCH THE WALLS OF HIS CELL UNTIL HIS KNUCKLES BUST OPEN, MAKING HIMSELF BLEED, AND HARMING HIMSELF IN MANY WAYS. HOWEVER, DEFENDANTS AND THEIR SUBOR-DINATES DISREGARD SUCH AS A GAME AND NEGLECT HIS SERIOUS MENTAL HEALTH AND MED-ICAL NEED. IT SHALL BE DULY NOTED THAT MR. PAGAN, ON 9/8/22, ATTEMPTED SUICIDE BY OVERDOSING ON PILLS (OVER 20), BUT LEFT IN HIS CELL TO ~~TOES~~ SUFFER, HE MADE THIS ATTEMPT IN THE PRESENCE OF DEFENDANTS PSYCH SUBORDINATES AND GUARDS OF THE STGMU, WHO FAILED TO NOTIFY MEDICAL. MR. PAGAN IS STILL ALIVE AT THIS TIME AND DATE OF THIS FILING... BUT HE WILL ONLY WORSEN IF ADEQUATE MENTAL HEALTH TREATMENT IS NOT ADMINISTERED IMMEDIATELY AND SUCH HAS YET TO BECOME AVAILABLE IN THE STGMU AKA "AMETYVILLE HORROR HOUSE".

### 2.   RONNIE E. JOHNSON - (41 YEAR OLD MOORISH MALE-AND-SPIRETUAL)

51. PRIOR TO WAREHOUSING IN THE STGMU, MR. JOHNSON WAS HOUSED ON A/C AT SCI-MAHANOY WITH A "B" CODE STABILITY RATING, HOWEVER, HE HAS A LONG HISTORY OF SERIOUS MENTAL ILLNESS, WHERE IN THE YEAR 2007 THE D.O.C. WAS COURT ORDERED BY THE PRESIDENT JUDGE OF CUMB-ERLAND COUNTY COURT OF COMMON PLEAS OF CARLISLE PENNSYLVANIA TO FURNISH AND ADMINI-STER URGENT MENTAL HEALTH TREATMENT FOR MR. JOHNSON. HE WAS DIAGNOSED WITH AXIS 1 BI-POLAR AFFECTIVE DISORDER, WHICH ULTIMATELY WOULD HAVE QUALIFIED HIM AS A "D" CODE, WHICH DEMANDS INTENSIVE TREATMENT SERVICES, 20 HOURS OF WEEKLY OUT-OF-CELL TIME, PRO-GRAMMING AND DAY-TO-DAY GROUP THERAPY. NONE OF MR. JOHNSON'S MEDICAL AND MENTAL HEALTH HISTORY WAS TAKEN INTO ACCOUNT WHEN DEFENDANTS MISDIAGNOSED HIM TO JUST-IFY STGMU PLACEMENT, WITH THE HELP OF THEIR PSYCH SUBORDINATES.

52. DEFENDANTS FAILED, BY OVERSIGHT AND INCOMPETENCE, TO TAKE INTO ACCOUNT MR. JOHNSON'S BREATHING DISABILITY (ASTHMA) WHEN THEY RECOMMENDED AND APPROVED HIS ARBITRARY PLACEMENT IN THE STGMU, ~~WHICH~~ WITHOUT A PSYCH EVALUATION, DUE NOTICE AND STG VALIDATION HEARING, BARRING HIM FROM THE OPPORTUNITY TO PROPERLY CHALLENGE SAID PLACEMENT.

53. ON 12/6/2021, MR. JOHNSON WAS PLACED ON A/C WITH PRIVILEGES OF COMMISSARY FOOD, PHONE CALLS, KIOSK-EMAIL, TABLET/RADIO, TELEVISION, TYPEWRITER, YARD AND MINI LAW LIBRARY, ALL AT SCI-MAHANOY, ON 3/31/2022, MR. JOHNSON WAS TRANSFERRED AND ACCEPTED INTO THE STGMU BY DEFENDANTS AND THEIR OVER AGGRESSIVELY AND NEGLIGENT SUBORDINATES, WHERE THEY

IMMEDIATELY STRIPPED HIM OF ALL SAID A/C PRIVILEGES AND PLACED HIM ON PHASE 5 IN A HARDCELL. SAID DEFENDANTS KNEW VERY WELL THAT THE STGMU WAS INOPERABLE DUE TO NATION-WIDE COVID-19 RESTRICTIONS AND THE ABSENCE OF PROGRAMMING, WHAT-SOEVER, BUT STILL CONTINUED HIS PROLONG WAREHOUSING.

**84.** DUE TO THE UNAVAILABILITY OF PROGRAMMING IN ITS TOTALITY, OF THE HORROR HOUSE, MR. JOHNSON BEGIN TO FILE NUMEROUS GRIEVANCES AND REQUEST SLIPS, CHALLENGING THE INHUMANE TREATMENT THEREOF, ONLY TO BE MET WITH UNFAVORABLE RESPONSES FROM DEFENDANTS. HE WAS NOT ALLOWED OUTDOOR EXERCISE REGULARLY AND HAS BEEN FORCED TO LIVE IN TOTAL CONFINEMENT (24 HOURS A DAY) DUE TO DEFENDANTS ARCHAIC STGMU INMATE HANDBOOK BARRING HIM ACCESS BECAUSE OF HIS BREATHING DISABILITY.

**55.** ON APRIL 22, 2022, MR. JOHNSON BEGIN TO SLIP INTO AN EXTREME DEPRESSIVE STATE OF MIND, DUE TO THE UNTIMELY DEATH OF HIS GRAND AUNT, AND REQUESTED TO SPEAK WITH DEFEND-ANTS OF THE PSYCH DEPARTMENT: SAAVEDRA, DUNCAN, JEFFRIES AND GRAFT, BUT A NURSE "PORTER" INFORMED HIM THAT NO PSYCH STAFF WAS IN THE INSTITUTION. MR. JOHNSON BEGIN TO PANIC.

**56.** ON APRIL 26, 2022, MR. JOHNSON WAS BATTLING WITH NUMEROUS PSYCHOLOGICAL ISSUES, HE'S FORCED TO ENDURE DUE TO BEING SEXUALLY HARASSED BY STGMU STAFF AND BEING SO PARA-NOID TO BELIEVING THAT THEY WERE POISONING HIS FOOD, WHERE HE BEGIN TO STARVE HIMSELF IN FEAR OF BEING POISONED AND AS A RESULT, HE LOSS 26 LBS (POUNDS). MR. JOHNSON WAS MADE A "C" CODE AND PLACED ON MEDICATION BY DEFENDANTS: SAAVEDRA, DUNCAN AND JEFFRIES, AT THE END OF APRIL 2022.

**57.** DEFENDANTS CONTINUE TO DENY MR. JOHNSON ACCESS TO OUT-OF-CELL GROUP THERAPY BY HOLDING HIM IN TOTAL ISOLATION SINCE HIS ARRIVAL, KNOWINGLY DEPRIVING HIM OF THE SOCIAL STIMULI NEEDED TO ASSIST IN PREVENTING HIS DEPRESSION (BIPOLAR AFFECTIVE DISORDER).

**58.** IN THE WAKE OF JUNE 2022, SAID DEFENDANTS TERMINATED TELEVISION VIEWING INDEFINATELY, ON L-A POD (ANETISVILLE), CAUSING MR. JOHNSON TO COMPLAIN VIA GRIE-VANCE AND REQUEST SLIP. BY JUNE 29, 2022, DEFENDANT GRAFT VISITED MR. JOHNSON AT HIS CELL DOOR AND TOLD HIM HE'S DIAGNOSED WITH ANXIETY, DEPRESSION AND ADJUSTMENT DISORDER AND ALSO TOLD HIM THERE WAS NOTHING SHE COULD DO ABOUT THE T.V. BEING OFF FOREVER. ON JULY 4, 2022, DURING THE EVENING HOURS OF 6:30 P.M., MR. JOHNSON HAD A ANXIETY ATTACK/HIGH BLOOD PRESSURE FROM EXCESSIVE STRESS AND WAS RUSHED TO THE MEDICAL DEPARTMENT/INFIRMARY FROM A RESULT OF THE ARDUOUS EFFECTS OF ISOLATION (I.E. LACK OF STIMULATION, ACCESS TO T.V., EXERCISE, PHONE, ETC.).

**59.** AS OF JULY 16, 2022, MR. JOHNSON CONTINUES TO BE SEVERELY PARANOID, THINKING STAFF IS TRYING TO EXECUTE HIM BY FOOD POISON. HE MAINTAIN STARVING HIMSELF, DRAMAT-ICALLY LOSING WEIGHT DAILY. HE CEASED FILING GRIEVANCES, DUE TO THREATS OF RETALIA-TION BY DEFENDANTS: RIDDLE AND T. WALKER. MR. JOHNSON IS SO DEPRESSED, DELUSIONAL AND OUT-OF-TOUCH WITH REALITY THAT HE FAILED TO NOTICE THAT THE ENTIRE L-A POD WAS GIVING EMPTY FOOD TRAYS FOR THE LAST TWO DAYS WITH THE THREAT OF ONE MORE.

**60.** ON AUGUST 17, 2022, MR. JOHNSON WAS DENIED BREAKFAST AND HIS ANXIETY MEDICATION WHEN THE STGMU CAPTAIN: DONGILLI ORDERED A SHAKE DOWN OF L-A POD WHICH LED TO MR. JOHNSON HAVING A MENTAL HEALTH CRISIS (MELT DOWN) OF SUICIDAL IDEATIONS, WHERE HE WAS REMOVED FROM L-A 1002 CELL AND PLACED IN A PSYCHIATRIC OBSERVATION CELL (POC) IN MEDICAL FOR 24 HOURS.

**61.** ON AUGUST 29, 2022, MR. JOHNSON HAD A PSYCHOLOGICAL EPISODE AND BEGIN SMEARING FECES ON HIS BODY AND CELL WINDOWS, BUT WAS LEFT WITHOUT ANY MENTAL HEALTH TREAT-MENT BY PSYCH DEFENDANTS, WHILE RUNNING AROUND NAKED FOR HOURS. AS-TO-DATE, MR. JOHNSON HAS LOSS 31 POUNDS, HE'S STILL ALIVE, HOWEVER, WITH A COMBINATION OF SERIOUS MENTAL ILLNESS, DETERIORATION OF THE MIND, BREATHING DISABILITY AND STARVATION, HIS CHANCES ARE SLIM TO NONE AT SURVIVING PROLONGED ISOLATION IN THE STGMU. (6 MONTHS).

**53.** COURTNEY DUNCAN - (28 YEAR OLD RASTAFARIAN MALE-AND-SPIRITUAL)

**62.** PRIOR TO WAREHOUSING IN THE STGMU, MR. DUNCAN WAS DIAGNOSED WITH DEPRESSION, ANXIETY, HALLUCINATIONS AND SUFFER WITH MINOR MEMORY LOSS, WHICH AS A RESULT, HE LACKS THE ABILITY TO READ AND WRITE. HE WAS PLACED ON THE DOC'S STABILITY "C" CODE RATING OF THEIR MENTAL HEALTH/I.D. ROSTER. IN JANUARY 2022, WHILE HOUSED ON A/C AT SCI-BENNER, DEFENDANTS: LITTLE, FERGUSON AND WINGARD ARBITRARILY PLACED MR. DUNCAN ON FILE TO BE HOUSED IN THE STGMU, WITHOUT DUE PROCESS AND ON FEBRUARY 10, 2022, HE WAS TRANSFERRED TO SCI-FAYETTE'S STGMU FOR AN UNDETERMINED AMOUNT OF TIME. UPON ENTRY THEREOF, DEFENDANTS: ARMEL AND RIDDLE STRIPPED MR. DUNCAN OF HIS A/C PHONE CALLS AND COMMISSARY FOOD PRIVILEGES AND PLACED HIM ON PHASE 5 (D/C), NEVER ONCE TAKEN INTO ACCOUNT ANY OF HIS MENTAL ILLNESS.

**63.** MR. DUNCAN WAS SO DETACHED FROM HIS CONDITION THAT HE BELIEVED SUCH ISOLATION WAS LEGAL AND/OR LEGIT, UNTIL A FELLOW PRISONER INFORMED HIM THAT THEY WERE SUPPOSE TO BE HAVING OUT-OF-CELL STRUCTURED ACTIVITIES BUT WERE BARRED FROM SUCH BECAUSE DEFENDANTS LACKED THE PROPER STAFF AND PERSONNEL TO EXECUTE SUCH. DEFENDANTS: RIDDLE, COOK, C.WALKER, SAAVEDRA AND JEFFRIES TOLD MR. DUNCAN, ON SEPARATE OCCASIONS THAT COVID-19 HAS EVERYTHING ON HOLD.

**64.** AFTER 5 MONTHS OF UNNECESSARY, PROLONGED ISOLATION, MR. DUNCAN STARTED EXPERIENCING AUDITORY HALLUCINATIONS AND BECAME EXTREMELY PARANOID, THINKING THAT HIS PEERS (OTHER MENTALLY ILL PRISONERS) WERE OUT TO KILL HIM AND THAT THEY WERE WORKING WITH THE DEFENDANTS TO HELP KEEP HIM IN THE STGMU. MR. DUNCAN BEGIN TO DETERIORATE DRAMATICALLY IN THE STGMU. EVERY MORNING HE WOULD MAKE ANNOUNCEMENT TO THE ENTIRE L-A POD THAT HE KNOWS THEY ARE TRYING TO TAKE HIM OUT.

**65.** ON JULY 16, 2022, AFTER BEING STARVED FOR TWO DAYS BY DEFENDANTS: RIDDLE AND T. WALKER'S SUBORDINATES, MR. DUNCAN SCREAMED OUT: " I CAN'T TAKE IT ANYMORE", AND BEGIN TO EAT HIS OWN FECES, IN THE ATTEMPT TO CALM HIS HUNGER PAINS, WHERE HE IMMEDIATELY VOMITED ALL OVER HIS CELL DOOR AND FLOOR. AT THE DATE OF SEPTEMBER 6, 2022, MR. DUNCAN WROTE A REQUEST SLIP TO DEFENDANT SAAVEDRA, ASKING FOR MENTAL HEALTH TREATMENT OR HE WILL KILL HIMSELF. AFTER NOT RECEIVING A RESPONSE BACK, TWO DAYS LATER, ON SEPTEMBER 8, 2022, AT AROUND 9:00 A.M., MR. DUNCAN ATTEMPTED SUICIDE BY OVERDOSE, SWALLOWING 20 PILLS (45 MG OF RIMRON), WHERE HE HAD TO BE RUSHED TO MEDICAL ONLY FOR MONITORING, BUT NO TREATMENT, IN A PSYCHIATRIC OBSERVATION CELL (POC) FOR 6 DAYS. AT THE FAST RATE MR. DUNCAN HAS DETERIORATED, IF THE DEFENDANTS DON'T PROVIDE HIM WITH ADEQUATE TREATMENT FOR HIS MENTAL HEALTH, HE MIGHT NOT MAKE IT OUT ALIVE.

**64.** KAREEM MAZYCK - (41 YEAR OLD NOI MALE-AND-SPIRITUAL)

**66.** PRIOR TO WAREHOUSING IN THE STGMU, MR. MAZYCK LACKED ANY MENTAL HEALTH ISSUES THAT HE RECALL. HE WAS A STABILITY "A" CODE BEING HOUSED ON A/C AT SCI-DALLAS, WITH PRIVILEGES OF PHONE CALLS, TABLET, VISITS AND COMMISSARY FOOD IN THE PHU, UNTIL DEFENDANTS: WETZEL, FERGUSON AND WINGARD ARBITRARILY RECOMMENDED AND APPROVED HIS PLACEMENT IN THE STGMU, WITHOUT DUE PROCESS, STRL VALIDATION HEARING AND NO PSYCH EVALUATION. HE WAS HERDED OFF TO THE STGMU FROM SCI-CAMPHILL ON JANUARY 7, 2021, AND STRIPPED OF ALL HIS A/C PRIVILEGES AND PLACED ON PHASE 5 (D/C) BY DEFENDANTS: ARMEL, TREMPUS, T. WALKER, AURANDT, HAWKENBERRY AND C.WALKER.

**67.** DURING HIS DEPRESSING, NEVERENDING HOUSING, MR. MAZYCK NEVER RECEIVED ANY GROUP THERAPY OR PROGRAMMING TO SPEAK OF DUE TO SUCH BEING INOPERATABLE FROM COVID-19, BUT SAID DEFENDANTS CONTINUE TO RUN THE STGMU UNDER FALSE PRETENSES. OVER TIME, THE EFFECTS OF PROLONGED SOLITARY CONFINEMENT TOOK ITS TOLL ON MR. MAZYCK, WHERE HE START EXPERIENCING SYSTOMS OF SERIOUS MENTAL ILLNESS, LIKE ANXIETY, DEPRESSION, PARANOIA AND SOME DELUSIONAL TENDENCIES, STATING THAT HE RECEIVES MESSAGES FROM THE TELEVISION. HE ALSO REPORTED SUICIDAL THOUGHTS TO DEFENDANTS: SAAVEDRA, DUNCAN, JEFFRIES AND RIDDLE, WHO ALL AGREED THAT HE JUST NEEDS SOME SLEEP AND PLACED HIM ON MEDICATION, MAKING HIM A "C" CODE.

**68.** KNEE DEEP IN, AFTER 17 MONTHS OF ISOLATION, MR. MAZYCK FILED GRIEVANCES AND REQUEST SLIPS DEMANDING TO BE RELEASED INTO GENERAL POPULATION BECAUSE THEIR WAS NO PROGRAMMING BEING INSTITUTED IN THE STGMU, ONLY MENTAL TORTURE. HE RECEIVED UNFAVORABLE RESPONSE THEREOF, ON EVERY LEVEL. AS OF JULY 16, 2022, MR. MAZYCK HAS ENDURED SEVERAL SETBACKS AND PHASE FREEZE, INDEFINATE PHASE 5 HOUSING (D/C), ALTHOUGH HE'S A/C, SEXUAL HARASSMENT AND SLANDER BY STGMU STAFF AND INFRINGEMENT OF HIS RELIGIOUS/SPIRITUAL RIGHTS (ISLAMIC LAWS), RETALIATION OF STARVATION AND MAIL TAMPERING BY DEFENDANTS: RIDDLE, T. WALKER, TREMPUS AND THEIR SUBORDINATES. AS-TO DATE- MR. MAZYCK IS STILL ALIVE, HOWEVER, HE HAS LOSS HOPE OF MAKING IT HOME TO HIS CHILDREN ALIVE.

5. ANGEL MALDONADO- (36 YEAR OLD HISPANIC-PUERTO RICAN MALE-AND-SPIRITUAL)

69. PRIOR TO WAREHOUSING IN THE STGMU, MR. MALDONADO HAD NO MENTAL HEALTH HISTORY, HOWEVER, HE STRUGGLED WITH DRUG AND ALCOHOL ABUSE BEFORE HIS INCARCERATION. HE WAS LABLED A "A" CODE ON THE D.O.C'S MENTAL HEALTH ROSTER.

70. MR. MALDONADO WAS HOUSED AT SCI-COAL TOWNSHIP AND HOUSED IN THE RHU ON 9/11/2020, FOR A NON-ASSAULT RELATED INCIDENT, IN WHICH HE RECEIVED 90 DAYS OF D/C TIME. AFTER 90 DAY D/C TIME EXPIRED ON 12/9/2020, HE WAS PLACED ON A/C PENDING RRL PLACEMENT. AFTER A YEAR ON A/C, MR. MALDONADO RETAINED PRIVILEGES OF PHONE CALLS, KIOSK-EMAIL, TABLET/RADIO, TELEVISION, TYPE WRITER, VISITATION AND COMMISSARY FOOD. ON 12/22/2021, HE FOUND OUT THAT THE RRL PLACEMENT WAS DENIED AND BY 12/28/2021 HE WAS TRANSFERRED TO SCI-FAYETTE'S L-BLOCK C-POD (A/C'S RHU) ON A/C STATUS.

71. DEFENDANTS AND SUBORDINATES, ON 12/29/2021, DID A "DRIVE-BY" VISIT AT MR. MALDONADO'S CELL DOOR, STATING: "YOUR BEING REVIEWED BY SECURITY, SO WE CAN'T RELEASE YOU TO GEN-POP!" WALKED AWAY.

72. ON 1/8/2022, MR. MALDONADO BEGIN TO BE TARGETED AND HARASSED BY DEFENDANTS' STGMU LIEUTENANT DISALVO, BECAUSE HE REFUSED TO BE HIS "SNITCH" (I.E. INFORMANT) ULTIMATELY MAKING HIM A PROSPECT FOR LONG-TERM SOLITARY CONFINEMENT OVER PROPERTY HE OWNED FOR OVER A DECADE. ON 1/10/2022, HE FILED A GRIEVANCE AGAINST L.T. DISALVO'S OFFICER ONE FOR USING HIS ADDRESS BOOK AS A TOOL FOR STGMU PLACEMENT.

73. ON 2/8/2022, MR. MALDONADO RECEIVED A DC-141 PART 4 FROM DEFENDANTS AND THEIR SUBORDINATES, STATING THAT HE'S BEING RECOMMEND FOR THE STGMU, BUT FAILING TO PROVIDE A DETAILED REASON WHY. WHERE AS HE WAS MISCONDUCT FREE FOR 16 MONTHS, AT THIS TIME. MR. MALDONADO APPEALED THEIR DECISION AND RECOMMENDATION.

74. IT SHALL BE DULY NOTED THAT DEFENDANTS DEPRIVED MR. MALDONADO OF HIS A/C PRIVILEGES FOR TWO MONTHS BEFORE FINALLY AFFORDING SUCH ON MARCH 3, 2022, TWO WEEKS BEFORE PLACING HIM "BACK" IN THE STGMU ON 3/18/2022; OF PHASE 5 ON L-A POD, SUBSEQUENTLY STRIPPING HIM OF ALL A/C PRIVILEGES, AGAIN.

75. IT SHALL ALSO BE NOTED THAT MR. MALDONADO WAS NEVER AFFORDED ANY PSYCH EVALUATION, OR A STG VALIDATION HEARING PRIOR TO SAID ARBITRARY PLACEMENT BY DEFENDANTS. THIS COUNTS AS THE FOURTH TIME MR. MALDONADO WAS MADE TO ENDURE EXTREME PROLONGED ISOLATION IN THE STGMU, REFLECTING THAT SUCH IS A NEVERENDING CYCLE AND RECYCLE. ONCE YOUR PLACED IN, YOU'LL NEVER BE RELEASED OUT.

76. DEFENDANTS STGMU STAFF MADE IT CLEAR TO MR. MALDONADO THAT IF HE REFUSE TO SIGN ANY 30 REVIEW PACKETS / FORMS, HE'LL NEVER GET OUT OF THE STGMU, CAUSING HIM TO BECOME HOPELESS AND DE-PRESSED.

77. DEFENDANTS SUBORDINATES AND STGMU STAFF ROUTINELY DENIES MR. MALDONADO HIS 30 AND 90 DAY REVIEWS, BECAUSE HE ALWAYS ASK ABOUT GROUP-THERAPY AND PROGRAM TREATMENT SPECIALIST, WHICH DONT EXIST IN THE STGMU, BUT IS SERIOUSLY NEEDED.

78. DEFENDANTS AND THEIR SUBORDINATES AT THE STGMU KNEW THAT DENIAL OF BASIC A/C PRIVILEGES FOR A INDEFINATE PERIOD THROUGH THEIR 6.5.1. POLICY WASN'T AN ORDINARY THING MR. MALDONADO COULD HAVE EXPECTED TO BE FORCED TO LIVE THROUGH IN EXTREME SOLITARY CONFINEMENT. CAUSING EXTREME DEPRESSION.

79. DEFENDANTS HAVE ARBITRARILY LABELED MR. MALDONADO A STG MEMBER AND APPROVED SAID PLACE-MENT WITHOUT A OPPORTUNITY TO PRESENT WITNESSES AS WELL AS CONFRONT OPPOSING EVIDENCE. AT NO TIME HAS HE HAD ANY MEETING OR HEARING CONCERNING DEFENDANTS VALIDATION PROCESS.

80. ON 3/29/2022, MR. MALDONADO WROTE DEFENDANTS PSYCH DR. SAAVEDRA A REQUEST SLIP INFORMING HIM THAT HE IS MENTALLY DETERIORATEING DUE TO HIS CURRENT HOUSING STATUS; HE'S EXPERIENCING INSOMNIA, ANXIETY, DEPRESSION AND SUICIDAL IDEATIONS, AND NEED HELP SLEEPING. THE NEXT DAY ON 3/30/2022, DR. SAAVEDRA PAID HIM A "DRIVE-BY" VISIT AT HIS CELL DOOR, ASKED HIM 3 QUESTIONS AND TOLD HIM HE'LL PRESCRIBE 15 MG OF REMERON, AND HAVING HIM PLACED ON THE ACTIVE MENTAL HEALTH/ID ROSTER AS A "C"- CODE.

81. ON OR AROUND 4/4/2022, MR. MALDONADO RECEIVED A "DRIVE-BY" VISIT FROM DR. SAAVEDRA, WHERE MR. MALDONADO COMPLAINED OF CONTINUED THOUGHTS OF SUICIDE AND DR. SAAVEDRA BOOST HIS MEDICATION UP TO 30 MG. IMMEDIATELY AFTER DR. SAAVEDRA EXITED L-A POD, OTHER MENTALLY ILL STGMU PRISONERS BE-GIN TO YELL AND VERBALLY ABUSE MR. MALDONADO, CALLING HIM WEAK, BROKEN, AND TELLING HIM TO KILL HIMSELF. THIS WENT ON FOR 10 HOURS, ALONG WITH BANGING, CONTINUING HIS THOUGHTS OF SUICIDE.

13.

82. DEFENDANTS AND THEIR STGMU STAFF FAILED TO CREATE A TREATMENT PLAN FOR MR. MALDONADO, KNOWING HE WAS SLIPPING INTO DEEP DEPTHS OF PSYCHOLOGICAL PAIN AND SUFFERING. BY 5/2/2022, HE WAS ARBITRARILY PLACED IN THE PSYCHIATRIC OBSERVATION CELL (POC) UNDER SUICIDE WATCH FOR 72 HOURS, BECAUSE HE DECLINED/REFUSED TO SPEAK WITH SAID DEFENDANTS. THE REASON HE DECLINED IS BECAUSE HE WAS AWAKEN OUT A DEEP-SLEEP AND WAS NOT IN THE MOOD FOR A DEGRADING STRIP SEARCH. ONCE IN THE POC, DEFENDANTS STGMU PRT STAFF PAID HIM A "DRIVE-BY" VISIT, THREATENING HIM TO "STOP WRITING OUTSIDE ORGANIZATIONS, PRISON SOCIETY, GRIEVANCES AND LAWSUITS OR THE POC WILL BE YOUR PERMANENT CELL".

83. IT SHALL BE DULY NOTED, DEFENDANTS STGMU UNIT MANAGER RIDDLE PLACED MR. MALDONADO AT SUBSTANTIAL RISK OF HARM BY PLACING HIM ON A SUICIDE WATCH PROTOCOL DESPITE NOT BEING A MENTAL HEALTH OFFICIAL AND PROVIDING HIM A T-SHIRT, BOXERS AND LONG STRIP OF CLOTH THE SIZE OF A TOWEL; IN A CELL THAT HAS A METAL DOOR HANDLE AND A SHOWER HEAD; WHICH ALL COULD BE USED TO MAKE A NOOSE; TIE AROUND HIS NECK AND HANG FROM.

84. IN RETALIATION OF MR. MALDONADO GRIEVANCE FILINGS, DEFENDANTS STGMU STAFF PLACED HIM ON PROPERTY RESTRICTION TO STOP HIS EFFORTS OF LITIGATION, CAUSING HIM NIGHTMARES AND INTENSIFYING HIS ANXIETY, DEPRESSION AND PTSD, SLIPPING TO THE EDGE OF NO RETURN.

85. ON 5/5/2022, ANOTHER "DRIVE-BY" VISIT WITH DEFENDANTS STGMU PRT STAFF, DISCUSSING MR. MALDONADO'S MENTAL HEALTH ISSUES AT HIS CELL DOOR, IN FRONT OF OTHER STGMU PRISONERS, CAUSED THEM TO LAUGH, SNICKER AND "GROND UP" (CURSE) WHEN HEARING SAID STAFF SPEAK ABOUT HIS HALLUCINATIONS, AS WELL AS MEDICATION SWAP.

86. DEFENDANTS AND SUBORDINATES HAVE CONTINUED TO DENY MR. MALDONADO OF ANY AND ALL PERIODIC REVIEWS TO MAKE IT APPEAR AS IF HE REFUSED WHICH HE CONTINUED TO APPEAL UP UNTIL DEFENDANT IN ARMEL AND SUBORDINATES TINA WALKER AND SCOTT RIDDLE', THREATS/PROMISE CONCERNING THE FILING OF PAPER WORK ON L-A POD.

87. ON 7/19/2022, MR. MALDONADO WAS SCHEDULED FOR A "ZOOM" VISIT WITH HIS MOTHER AND DAUGHTER, BUT DEFENDANT ARMEL AND SUBORDINATES OF THE STGMU HINDERED SUCH BY ENSURING THEY BLOCKED THE "ZOOM" LOG, IN WHICH NEVER OCCURRED TO MR. MALDONADO UNTIL THIS CHAIN OF EVENTS.

88. AS OF 7/21/2022, AND AFTER 22 MONTHS OF PSYCHOLOGICAL AND PHYSICAL DETERIORATION, MR. MALDONADO HAS FINALLY SLIPPED INTO A SHELL OF HIMSELF. WHEREFOR THE PAST FEW DAYS, HE'S BEEN DISPLAYING ACTS OF SELF HARM BY MAKING HIMSELF BLEED FROM PUNCHING HIMSELF IN THE MOUTH, BUSTING OPEN HIS LIP, SMEARING BLOOD ON HIS CELL WINDOW AND WALLS, SPELLING OUT: "KILL ME, IM READY TO GO".

89. ON 9/8/2022, AT ABOUT 9:00 A.M., MR. MALDONADO ATTEMPTED SUICIDE BY OVERDOSE OF 38 PILLS OF REMERON AND HAD TO BE RUSHED TO THE OUTSIDE HOSPITAL FOR TREATMENT. AS-TO DATE- MR. MALDONADO IS STILL ALIVE, HOWEVER, HE LOST ALL HOPE OF SURVIVAL AND IS IN SERIOUS NEED OF ADEQUATE MENTAL HEALTH TREATMENT" AND PLACED IN A THERAPEUTIC SETTING WHERE PSYCHOSOCIAL REHABILITATION IS PROVIDED TO DECREASE HIS SUICIDAL SYMPTOMS. ON 9/20/2022, MR. MALDONADO WAS REMOVED FROM L-BLOCK AND PLACED ON J-BLOCK D-POD, OUTSIDE OF THE STGMU, FOR REASONS UNKNOWN TO HIM.

## 6. T. MONTANA BELL - (30 YEAR OLD KONGOLESE MUAT MALE-AND-SPIRITUAL)

90. PRIOR TO WAREHOUSING IN THE STGMU, MR. BELL WAS DIAGNOSED WITH ANXIETY, ANTI-SOCIAL PERSONALITY DISORDER, UNSPECIFIED DEPRESSION AND PTSD. HE IS CURRENTLY A "C"-CODE, FLIRTING WITH A "D" CODE; WHERE ON TWO BRIEF OCCASIONS HE WAS LABELED A "D"-CODE AND HOUSE IN THE DIVERSIONARY TREATMENT UNIT (DTU) WHILE ON RRL IN 2016 AT SCI-BENNER.

91. WHILE AT SCI-PHOENIX, MR. BELL WOULD MEET WITH THE PSYCH STAFF EVERY 2 TO 3 DAYS CLAIMING TO HAVE VISIONS OF DYING IN ISOLATION AND THE NEED TO STAY AS FAR AWAY AS HE CAN. HE WOULD DEMAND THE PSYCHS TO "PROTECT HIM FROM THE BEAST." MR. BELL HAS A LONG HISTORY OF SERIOUS MENTAL ILLNESS AND TREATMENT PRIOR TO INCARCERATION THAT DATES BACK TO HIS CHILDHOOD YEARS. HE IS SERVING AN EXTREMELY LONG PRISON SENTENCE WITH 11 YEARS IN AND HAS NEVER RECEIVED ADEQUATE MENTAL HEALTH TREATMENT IN THE PA DOC.

92. WHILE SERVING D/C TIME FOR BREWING 5 GALLONS OF ALCOHOL, INCLUDING A NUMBER OF OTHER RULE VIOLATIONS, MR. BELL WAS INFORMED THAT HE WAS BEING RECOMMENDED FOR THE BMU, SRTU AND IMU, SO HE COULD RECEIVE PROPER COUNSELING, THERAPY AND MENTAL HEALTH SERVICES TO COMBAT HIS ALCOHOL ABUSE AND MENTAL ILLNESS.

93. INSTEAD, DEFENDANTS APPROVED MR. BELL FOR STGMU PLACEMENT WITHOUT ANY DUE NOTICE, PSYCH EVALUATION AT SCI- WAYMART, STG VALIDATION HEARING OR THE OPPORTUNITY TO CHALLENGE SAID PLACEMENT THEREOF, IN BETWEEN JULY AND NOVEMBER 2021.

14.

94. By 11/17/2021, Mr. Bell was transferred to SCI-Fayette's STGMU, where as soon as he step foot off the bus he shouted: "I'm gone kill myself!". Instead of defendants subordinates summoning mental health staff or placing him in the POC, he was escorted to L-A-POD Phase 5 and told by STGMU Captain Carl Walker to: "Go ahead and kill yaself!". This first night, Mr. Bell took his T-shirt and made a noose of it, because he was deprived of cell contents, he tied it to the top vent and wrapped it around his neck and hung himself; in the attempt of suicide. He was unsuccessful because the shirt popped off the vent. He tried 3 more times; to no avail. Mental health treatment was never administered.

95. Mr. Bell was brutally assaulted and sexually assaulted on 12/21/2021, by defendants subordinates, which a investigation is pending. Mr. Bell is a qualified hearing impairee, whose housing status in the STGMU is arbitrary and contrary to DC-ADM 006 policy, but defendants oversight and incompetence caused them to neglect Mr. Bell's physical disability.

96. Mr. Bell's mental health has deteriorated so dramatically that he lacks any motivation to shower, even though he has one in his cell; he fails to groom himself or wash his clothes. He's barred from outdoor exercise due to the defendants and their subordinates refusing to left his "restrictions"; it's been 10 months consecutively. He's been experiencing hallucinations and delusions, where he believe he can hear, see and receive messages from the dead; which causes him to be awake two to three days at a time.

97. Mr. Bell always express erratic behavior towards the defendants and their subordinates whenever he see them enter the pod because he believes they are evil spirits depriving him of his mail and tampering with his food. As a result they retaliate by denying him periodic reviews, make fun of his accent and broken english.

98. Mr. Bell has been on Phase 5 of the STGMU for 11 months consecutively, even though it's only a 2 month (60 days) Phase; he's so mentally unstable, he can't figure out how to make the next phase. Mr. Bell has written numerous grievances and request slips concerning the mistreatment and the ~~extra~~ pain he endured and he has written letters to the D.O.C's central office, only to receive unfavorable responses or none at all.

99. Mr. Bell has requested that the defendants recommend and approve his transfer to another program (SRTU, BMU, etc) where adequate programming may exist, because the STGMU only keep him locked in the cell 24 hours of total confinement and everyday he's losing apart of himself.

100. Since May 2022, Mr. Bell has endured grievance deprivation. On 7/14/2022 and 7/15/2022, defendants subordinates appeared in person and threatened the entire L-A pod with starvation if they continued to file "paperwork" against them; which caused Mr. Bell to slip off the edge.

101. As-to date- Mr. Bell is still alive, however, he has resulted to cutting his wrist and ankles, self-mutilation, head banging and covering himself in his own feces. He has become so hopeless that he don't expect to make it out of "Amityville Horror House" alive. On 9/20/2022, he was removed from L-Block and placed on J-Block D-Pod (RHU), for reasons unknown to him.

7. **MICHAEL SCULLEN** – ( 30 YEAR OLD AFRIKAN-IRAQI MALE-AND- SPIRITUAL )

102. Prior to warehousing in the STGMU, Mr. Scullen was diagnosed with Bipolar and labeled a "C"-code, flirting with a "D"-code. He was also diagnosed with a chameleons addiction. He has a long history of serious mental illness that dates back to his youth, (explained in later paragraphs). He's also diagnosed with anti-social personality disorder.

103. On 11/3/2021, Mr. Scullen get into a minor "scuffle" with another prisoner at SCI-Benner; he was placed in the RHU and sanctioned to 75 days D/C time on 11/12/2021.

104. On 1/18/2022, Mr. Scullen was placed on A/C with phone calls, email, commissary food and weekly visitation privileges. By 1/21/2022, for the first time, he was informed that he was under review for STGMU placement, and wasn't given any reason(s) why such a recommendation was initiated. On three occasions he has written the security office and received no reply. And he followed up and wrote his counselor and PRC, asking "why" he was going to the STGMU? They responded stating they have no details and directed him to write security.

105. It shall be duly noted that Mr. Scullen's counselor and PRC claiming to not to have any details or idea why he was being placed/processed for the STGMU, but, yet and still signed off on said placement, is clear proof that the STGMU placing of Mr. Scullen was caprice and arbitrary from the start, and completely misleading.

106. AT NO TIME OF THE STGMU RECOMMENDATION OF MR. SCULLEN, DID HE RECEIVE A DC-141 RATIONALE, EXPLAINING THE REASON(S) BEHIND SUCH, IN VIOLATION ON DC-ADM 802, SEC.2(D)(3); IN-FACT 8 MONTHS AFTER STGMU HOUSING, HE IS STILL UNAWARE. AT NO TIME PRIOR TO STGMU PLACEMENT WAS MR. SCULLEN AFFORDED ANY OPPORTUNITY TO RESPOND, OBJECT AND REBUT TO THE RATIONALE. AT NO TIME WAS HE PRESENTED WITH ANY FACTS OR EVIDENCE TO SUBSTANTIATE SUCH, HE WAS ISSUED NO STGU VALIDATION HEARING, POLICY, CRITERIA OR ANY INTERVIEW; NOR WAS HE AFFORDED THE OPPORTUNITY TO CHALLENGE SUCH FACTS OR EVIDENCE.

107. AT NO TIME OF THE STGMU RECOMMENDATION WAS A PSYCH EVALUATION AT SCI-WAYMART EXECUTED, TO ENSURE THE MENTAL STABILITY OF MR. SCULLEN WAS HEALTHY ENOUGH TO ENDURE THE ISOLATION OF THE STGMU.

108. ON 4/5/2022, MR. SCULLEN WAS TRANSFERRED FROM SCI-BENNER'S RHU TO SCI-FAYETTE'S STGMU, ARBITRARILY, BY DEFENDANTS SUBORDINATES. UPON ENTRY INTO THE STGMU'S L-A POD, DEFENDANTS STRIPPED HIM OF ALL HIS A/C PRIVILEGES AND PLACED HIM ON PHASE 5 (DEFACTO D/C STATUS) IN A "HARD CELL."

109. AFTER DAYS ON PHASE 5, MR. SCULLEN BEGIN TO EXPERIENCE PSYCHOLOGICAL SHOCK, WHICH PROMPT HIM TO ASK DEFENDANTS SUBORDINATES WHY HE IN A "HARD CELL"? WHEN HE WASN'T PROBLEMATIC OR THREATENING. SUBORDINATE: SCOTT RIDDLE, UNIT MANAGER OF THE STGMU, TOLD HIM IT WAS FOR "PUNISHMENT" FOR STGMU BEHAVIOR AND TO GET OUT, YOU HAVE TO EARN IT. HE WAS TOLD BY RIDDLE'S SUBORDINATE: LT. DONNELLY THAT ALL NEW STG'S ON PHASE 5 ARE PLACED IN A "HARD CELL" FOR SECURITY REASONS.

110. ON 4/7/2022, DURING PRC WITH DEFENDANTS STGMU SUBORDINATES, MR. SCULLEN WAS FORMALLY TOLD HE WAS IN THE STGMU, WHERE A DEPUTY TREMPUS ADDED "WELCOME TO THE STGMU, ALTHOUGH YOUR ON A/C STATUS, YOUR IN OUR WORLD NOW, WHICH MEANS WE DON'T HAVE TO GIVE YOU A MISCONDUCT TO DO OR A D/C SANCTION TO GREND YOU UP. ALL OF YOUR A/C PRIVILEGES ARE HEREBY REVOKED. YOUR NOW ON PHASE 5, WHICH MEANS FOR ALL INTENTS AND PURPOSES YOUR ON D/C STATUS. IF YOU WANT TO BE AFRAID OF A STG, THAN BE PREPARED TO BE PUNISHED FOR IT."

111. ON OCCASION, MR. SCULLEN HAS BEGGED DEFENDANTS AND COMPANY TO GIVE HIM HIS A/C PRIVILEGES BACK, TO NO AVAIL. HE WRITTEN REQUESTS TO DEFENDANTS STGMU COUNSELOR: COOK, INQUIRING ABOUT TRANSFER PACKET, HOW LONG WILL HE BE PHASE 5 AND WHEN CAN HE EXPECT HIS 4 HOURS OUT-OF-CELL GROUP TREATMENT. WHERE COOK FURNISHED HIM NEGATIVE RESPONSES THAT EXACERBATED HIS MENTAL HEALTH.

112. DEFENDANTS STGMU PSYCHOLOGIST (PGS) JEFFRIES PAID MR. SCULLEN A "DRIVE-BY" VISIT AT HIS CELL DOOR ON 4/12/2022, AND INFORMED HIM THAT 2 DAYS AGO DR. SAAVEDRA DECIDED TO CHANGE HIS DIAGNOSIS FROM "BIPOLAR" TO "ADJUSTMENT DISORDER." DR. SAAVEDRA CLEARLY "MIS-DIAGNOSED" MR. SCULLEN. WHEN AFTER ONLY 5 DAYS OF BEING HOUSED IN THE STGMU, AT NO TIME HAVE HE EVER BEEN EVALUATED, INTERVIEWED, SPOKE TO, OR EVEN LAID EYES ON HIM. AND PRIOR TO SAID DATE, MR. SCULLEN HAVE NEVER SPOKEN TO ANYONE FROM THE PSYCH DEPARTMENT.

113. MR. SCULLEN WAS MIS-DIAGNOSED BY DR. SAAVEDRA IN A MALICIOUS AND MAL-INTENT ATTEMPT TO DENY HIM ADEQUATE MENTAL HEALTH TREATMENT PROVIDED TO PATIENTS WHO SUFFER FROM BIPOLAR DISORDER AND THE LIKE. WHEN HE CONFRONTED DR. SAAVEDRA ABOUT SUCH, SAAVEDRA SNAPPED, STATING: "I WILL TRY TO DO EVERYTHING I CAN TO DENY GANGBANGERS LIKE YOU TREATMENT, YOU ARE NOT MENTALLY ILL, YOUR NOT BIPOLAR, YOU ARE JUST A CRIMINAL MINDED SCUMBAG."

114. DUE TO THE DETRIMENTAL IMPACT THAT THE "EXTREME ISOLATION" HAS ON MR. SCULLEN, HE BEGUN TO HALLUCINATE, VISUALLY AND AUDITORY. BELIEVING THERE IS A "DARK SHADOW" IN THE SHAPE OF A "MAN" STANDING IN THE CORNER OF HIS CELL, STARING AT HIM. HE HAS ATTEMPTED TO ENGAGE IN CONVERSATION WITH THE "SHADOW-MAN", BUT IT DIDN'T RESPOND. SCULLEN FILED A GRIEVANCE COMPLAINING OF SUCH AND ABOUT SUFFERING FROM DEPRESSION, HOPELESSNESS, CONSTANT ANXIETY ATTACKS, LACK OF FOCUS, BIPOLAR MOOD SWINGS AND SUICIDAL IDEATIONS. SUBSEQUENTLY PLACING DEFENDANTS ON NOTICE, DATED 4/22/2022.

115. ON 4/26/2022, VIA REQUEST SLIP, MR. SCULLEN INFORMED DR. SAAVEDRA AND PGS JEFFRIES ABOUT THE HALLUCINATIONS OF THE "SHADOW-MAN" HE NOW CALLS "SHAREEF", AND TO BE PLACED BACK ON HALDOL FOR THE TREATMENT THEREOF.

116. ON 5/5/2022, MR. SCULLEN WROTE A REQUEST SLIP TO DEFENDANTS STGMU PRT STAFF AND INFORMED THEM OF THE DESCRIBED SYMPTOMS OF SERIOUS MENTAL ILLNESS AND THE "SHADOW MAN SHAREEF" LIVING IN HIS CELL. THAT SAME DAY HE WAS PULLED OUT HIS CELL AND MET WITH PRT AND REITERATED SAID SYMPTOMS TO THEM AND WAS PRESCRIBED 1 (ONE) MG OF HALDOL TO COMBAT SAID SYMPTOMS, DACILY, OF HALLUCINATIONS/PSYCHOTIC SYMPTOMS.

117. WHILE CAUGHT IN A MANTAL-SCHIZO-EPISODE, MR. SCULLEN SENT DEFENDANTS AND SUBORDINATES REQUEST SLIPS EXPLAINING THAT HIS CELL "SHAREEF" HAD FINALLY FELL ASLEEP AND HOW THEY WERE

NOT GETTING ALONG, AND THEY WONE END UP HURTING EACH OTHER IF ONE OF THEM IS NOT REMOVED FROM THE CELL. HE RECEIVED SHOCKING RESPONSES INFORMING HIM THAT HE WAS A Z-CODE AND THEREFORE HE HAD NO CELLY, DATE 5/9/2022.

118. ON 5/13/2022, MR. SCULLEN WROTE DEFENDANTS STGMU PSA REGINA CHECK (GRAFT) COMPLAINING ABOUT STILL HALLUCINATING AND REQUESTED FOR AN INCREASE IN HIS HALDOL.

119. IT SHALL BE DULY NOTED THAT ON 5/5/2022 AND 5/20/2022, MR. SCULLEN EXERCISED THE FILING OF THE DC-ADM 802 APPEAL PROCESS TO DEFENDANTS AND THEIR SUBORDINATES PUTTING THEM ON NOTICE ABOUT THE EXPERIENCES OF SERIOUS MENTALLY ILL SYMPTOMS THAT CAUSED HIM TO DRAMATICALLY DETERIORATE IN HIS PROLONGED ISOLATION AND WHERE HE REQUESTED HIS RIGHT OF VOLUNTARY COMMITMENT (I.E. 201), GOVERNED BY THE "MENTAL HEALTH PROCEDURES ACT". BOTH WERE DENIED.

120. ON 5/23/2022, MR. SCULLEN FILED A "201" VOLUNTARY COMMITMENT TO THE MENTAL HEALTH UNIT TO DEFENDANTS CHIEF HEALTH CARE ADMINISTRATOR JAMES BRIGHT (SCI FAYETTE) AND DR. SAAVEDRA AND LPM LISA DUNCAN; HE ALSO SUBMITTED A DC-ADM 006 INMATE DISABILITY ACCOMMODATION REQUEST FORM, REQUESTING FOR EMERGENCY MENTAL HEALTH TREATMENT TO COMBAT THE SYMPTOMS OF SERIOUS MENTAL ILLNESS.

121. ON THE EVENING OF 5/23/2022, WHILE LISTENING TO HALLUCINATIONS, MR. SCULLEN TOOK A RAZOR BLADE AND CUT AND SLICED HIS CHEST AND LEFT ARM UP OVER 37 TIMES. HE THEN TOOK A TOE NAIL CLIPPER AND CLIPPED 6 SECTIONS OF SKIN OFF HIS CHEST. HE THEN TOOK TWO STAPLES AND BEGUN TO PIERCED HIS CHEST WITH THEM; IMMEDIATELY AFTER, WHILE COVERED IN HIS OWN BLOOD, STGMU LT. DISALVO ADMINISTERED A HUGE BURST OF OC SPRAY ON HIS FACE AND OPEN WOUNDS. LT. DISALVO AND COMPANY THEN ESCORTED MR. SCULLEN TO THE POC IN THE MEDICAL DEPARTMENT.

122. ON 5/24/2022, WHILE IN THE POC, MR. SCULLEN WAS GIVEN A PEN AND TOLD TO KILL HIMSELF WITH IT BY DEFENDANT ARMEL'S SUBORDINATE. SCULLEN TOOK THE PEN AND REPEATEDLY STABBED HIMSELF IN THE LEFT UPPER ARM CAUSING BLEEDING AND BRUISING. DR. SAAVEDRA HAD WATCHED HIM DO THIS FOR 2 MINUTES BEFORE HE TOLD THE SUBORDINATE TO TAKE THE PEN. LATER THAT SAME DAY WHILE LISTENING TO HALLUCINATIONS, SCULLEN SMEARED FECES ON HIS STOMACH, THE POC DOOR, WINDOW AND LEFT SIDE WALL, WHERE THE FINGER PAINTED IN THE WINDOW: "PLZ HELP ME."

123. ON 5/25/2022, WHILE LIVING IN HIS OWN FECES AND OPEN SUICIDE SMOCK, MR. SCULLEN WAS PAID A "DRIVE-BY" VISIT AT HIS POC CELL BY DEFENDANTS SUBORDINATES: T. WALKER, C. WALKER, DR. SAAVEDRA AND COMPANY WHERE THEY BEGUN THREATENING AND ANTAGONIZING HIM. OUT OF EMOTION AND FRUSTRATION FROM THEIR HARSH WORDS AND LISTENING TO "SHAREEF", WHO HE BELIEVED WAS SITTING ON HIS BED, MR. SCULLEN BEGUN TO HEAD BUTT THE FECES COVERED WINDOW, CAUSING SWELLING AND A SLIGHT ABRASION ON HIS FOREHEAD.

124. BEING DEPRESSED AND CAUGHT IN A ONGOING MANIAC EPISODE, ON 5/26/2022, WHILE LISTENING TO HALLUCINATIONS, MR. SCULLEN BEGUN HEAD BUTTING THE FECES COVERED WINDOW FOR ABOUT 20 MINUTES CONSECUTIVELY WHILE IN HIS POC CELL AT THE TIMES OF 7:10 A.M. TO 7:30 A.M.; DEFENDANT ARMEL'S SUBORDINATE CAME OUT THE BUBBLE AND ORDERED SCULLEN TO "STOP" AND HE RESPONDED: "ITS NOT ME, ITS SHAREEF". SCULLEN'S FOREHEAD WAS A EXTREMELY SWOLLEN AND BLOODY MESS. IT HAD DEEP CUTS/GASHES AND WAS DRIPPING BLOOD ALL DOWN HIS FACE. HE THEN SMEARED MORE FECES ON ALL THE WALLS OF HIS POC CELL, INCLUDING AREAS OF THE FLOOR AND THE FINGER PAINTED IN THE FECES: "I FEEL LIKE        " AND "I'M A PILE OF        "; SHORTLY AFTER THIS, HE WAS TAKEN OUT OF HIS POC CELL AND SEEN BY MEDICAL FOR HIS BLOODY FOREHEAD AND PHOTOS WAS TAKEN THEREOF.

125. IT SHALL BE DULY NOTED THAT MR. SCULLEN STARVED HIMSELF FROM 5/24/2022 TO 5/26/2022; HE WOULD DUMP ALL HIS FOOD ON THE FLOOR AND THEN URINATE ON IT. HE WAS LIVING IN FECES, URINE AND ROTTEN FOOD THE ENTIRE TIME.

126. ON 6/7/2022, WHILE IN A POC CELL ON L-B POD OF THE STGMU ON "SUICIDE WATCH" AND "HIGH ALERT WATCH" (CAMERA CELL), MR. SCULLEN WAS PAID A "DRIVE-BY" VISIT FROM PSS GRA CHECK, WHERE HE SWALLOWED, CONSUMED AND/OR INGESTED A "DOUBLE-A" BATTERY FOR THE SOLE PURPOSE OF INTENDING ON IT TO EXPLODE IN HIS STOMACH AND CAUSE INTERNAL DAMAGE, DUE TO FEELING DEPRESSED AND LISTENING TO "SHAREEF." SCULLEN WAS LATER TRANSFERRED TO THE OUTSIDE HOSPITAL IN UNIONTOWN, PA., WHERE HE WAS PLACED UNDER ANESTHESIA AND THE BATTERY WAS SURGICALLY REMOVED FROM HIS STOMACH. WITHIN 24 HOURS AFTER SURGERY, MR. SCULLEN WAS BACK IN THE STGMU.

127. ON 6/10/2022, THREE DAYS LATER, WHILE FEELING DEPRESSED AND LISTENING TO "SHAREEF", MR. SCULLEN REMOVED THE CARD BOARD FROM HIS TOILET PAPER ROLL, FOLDED IT UP SEVERAL

17.

TIMES, WRAPPED IT IN PLASTIC SANDWICH BAGS AND SWALLOWED IT IN THE ATTEMPT TO HARM HIMSELF, CAUSING WEEKS OF PAIN AND SUFFERING, DUE TO THE CARDBOARD BLOCKING UP HIS BOWELS, MAKING HIM CONSTIPATED FOR WEEKS.

128. MR. SCULLEN RECEIVED 2 DIFFERENT STOOL SOFTENERS ALONG WITH 2 DIFFERENT LAXATIVES IN A ATTEMPT TO AID THE CONSUMED CARDBOARD'S PASSAGE THROUGH HIS BOWELS, TO NO AVAIL; SO ON 6/30/2022, MEDICAL'S PHYSICIAN ASSISTANT ORDERED AND PERFORMED A ENIMATA ON HIM, CAUSING A BOWEL MOVEMENT, BUT TO NO AVAIL, THE CARDBOARD NEVER EXITED FROM HIS STOMACH.

129. ON 7/4/2022, MR. SCULLEN FILED A SICK CALL, REGARDING THE CONSUMED CARDBOARD AND BEING UNABLE TO HAVE ANY FURTHER BOWEL MOVEMENTS AND HOW HE BELIEVED THE CARD BOARD IS STILL IN HIS STOMACH. ON 7/10/2022, HE FILED A SECOND SICK CALL, REQUESTING A BODY SCAN TO LOCATE THE CARDBOARD, WHICH WAS DENIED B'S DEFENDANTS SUBORDINATES.

130. ON 7/14/2022, STGMU U/M RIDDLE MADE A TOUR ON L-A POD AND SH☉STED AT ALL THE STGMU PRISONERS TO "LISTEN UP", WHERE HE THREATENED THEM WITH 3 DAYS OF TOTAL STARVATION IF THE CONTINUED TO FILE GRIEVANCES AND 802 APPEALS, SCULLEN SHOUTED:" YOU CAN'T DO THAT...". RIDDLE CONTINUED HIS THREATS AND EXITED THE POD. THE NEXT DAY SCULLEN ATT-EMPTED TO FILE A GRIEVANCE ANYWAY, WHICH WAS TRASHED INSTEAD BY RIDDLE'S SUB-ORDINATE, AND AS A DIRECT RESULT, SCULLEN AND THE ENTIRE L-A POD WAS MADE TO ENDURE 3 DAYS OF FOOD STARVATION /DEPRIVATION. THE NEXT DAY, 7/15/2022, DEPUTY T. WALKER MADE A TOUR ON L-A POD AND FOLLOWED UP WITH MORE THREATS AND ANTAGONIZATION.

131. DUE TO THE NEVERENDING FEELINGS OF DEPRESSION AND STILL HALLUCINATING, SCULLEN WROTE LPM DUNCAN A REQUEST SLIP BEGGING FOR AN INCREASE IN HALDOL, WHICH WAS GRANTED AND SO-TO-DATE—SCULLEN IS PRESCRIBED 1MG IN THE A.M. AND 1MG IN THE P.M.

132. ON 7/25/2022, SCULLEN WROTE DEFENDANTS SUBORDINATES, REQUESTING TO BE PHASED DOWN TO PHASE 4 AND EXPLAINING THAT HE WAS NEVER REFUSING THE PROGRAM AND REALLY TRY-ING HIS BEST, BUT IF NOT FOR HIS 6FT 9 INCH, 275 LB CELLY "SHAREEF", NOT LETTING HIM LEAVE HIS CELL FOR 30 DAYS REVIEW HE WOULD BE ON PHASE 4 ALREADY. HE ALSO POINTED OUT THAT HE WAS MISCONDUCT FREE.

133. IN REGARDS TO SCULLEN'S MENTAL HEALTH HISTORY, SUCH DATE BACK☉ TO 9 YEARS OLD. FROM 11 TO 18 YRS OLD, WHILE ON JUVENILE PROBATION, SCULLEN WAS INVOLUNTARY COMMITTED INTO MULTIPLE RESIDENTIAL TREATMENT FACILITIES (RTF) AND (302), HE WAS COMMITTED, INVOLUNTARILY, INTO MENTAL HEALTH HOSPITALS ON NUMEROUS OCCASIONS, AND HIS PRIOR DIAGNOSIS ARE: BIPOLAR-TYPE1, MAJOR DEPRESSION, OPPOSITIONAL DEFIANT DISORDER, INTERMITTENT EXPLOSIVE DISORDER, REACTIVE ATTACHMENT DISORDER, ANTI-SOCIAL PER-SONALITY DISORDER AND ATTENTION DEFICIT HYPER ACTIVITY DISORDER, ALL WHICH WERE DIAGNOSED BY THE MULTITUDE OF PSYCH-DOCTORS FROM SAID RTF AND MENTAL HEALTH HOSPITALS.

134. IN OR AROUND 2016 AFTER MULTIPLE SUICIDE ATTEMPTS BY HANGING, SCULLEN WAS INVOLUNT-ARILY COMMITTED INTO THE D.O.C'S SPECIAL ASSESSMENT UNIT (SAU) AT SCI-WAYMART WHERE HE WAS PSYCHOLOGICALLY ASSESSED /EVALUATED FOR 30 DAYS. DURING SUCH TIME IN THE SAU HE DID SIGN A "RELEASE OF INFORMATION" FORM AND HAD THE ERIE COUNTY PROBATION OFF-ICE SHIP HIS MENTAL HEALTH RECORDS TO THE PA.D.O.C. THEREFORE THE DEFENDANTS AND THEIR SUBORDINATES ARE FULLY AWARE OF ALL HIS EXTENSIVE MENTAL HEALTH ISSUES AND HISTORY.

135. AS-TO DATE- MR. SCULLEN IS STILL ALIVE, HOWEVER, HE CONTINUE TO HALLUCINATE OF HIS CELLIE "SHAREEF". HE HAS YET TO EJECT THE "CARDBOARD" THAT'S LODGE IN HIS STOMACH AND HE'S STILL EXPERIENCING CONSTANT SYMPTOMS OF SUICIDE. HE HAS BECOME SO HOPE-LESS, HE DOUBT HE WILL MAKE IT OUT "AMETIVILLE HORROR HOUSE" ALIVE. ON 9/15/2022, MR. SCULLEN ATTEMPTED SUICIDE, AGAIN, BY SWALLOWING A RAZOR BLADE. HE WAS OC SP-RAYED BY STGMU OFFICER FOR SUCH AND PLACED IN A L-B POD POC CELL. DAYS LATER, HE WAS X-RAYED BUT DENIED MEDICAL TREATMENT. HE STILL HAS THE RAZOR IN HIS STOMACH (WITH THE "CARD BOARD").

**V.** CLAIMS FOR RELIEF: "A" PROCEDURAL DUE PROCESS VIOLATION OF THE 14TH AMENDMENT. ALL HEREIN NAMED DEFENDANTS ARE GUILTY

136. THE PLAINTIFFS INCORPORATES BY REFERENCE PARAGRAPHS 1 THROUGH 135 OF THIS COMPLAINT.

137. THE 14TH AMENDMENT, AS APPLIED TO THE STATES BY THE AUTHORS OF OUR CONSTITUTION, PROHIBITS DEPRIVATIONS OF PROCEDURAL DUE PROCESS.

138. DEFENDANTS' POLICIES, PROCEDURES AND ROUTINE PRACTICES SYSTEMICALLY VIOLATE THE 14TH AMENDMENT RIGHTS OF THE "STGMU PRISONERS" (I.E. PLAINTIFFS). SUCH POLICIES, PROCEDURES, AND ROUTINE PRACTICES INCLUDE, WITHOUT LIMITATION:

- "PROLONGED CONFINEMENT" OF PRISONERS WITH MENTAL ILLNESS IN THE STGMU FOR CONDUCT DIRECTLY ATTRIBUTABLE TO THEIR MENTAL ILLNESS.
- THE UNAVAILABLE ACCESS TO A "POLICY" (I.E. DC-ADM 6.5.1) THAT GOVERNS THE PLACEMENT OF THE STGMU.
- THE UNAVAILABLE ACCESS TO "PROPER" NOTICE, REVIEW, AND REASONS OF THE STGMU HOUSING.
- THE UNAVAILABLE ACCESS TO A "STG VALIDATION HEARING AND CRITERIA" THEREOF, PRIOR TO STGMU RECOMMENDATION AND HOUSING.
- DEPRIVATIONS OF PSYCHOLOGICAL EVALUATIONS AT SCI-WAYMART PRIOR TO STGMU RECOMMENDATION AND HOUSING.
- MIS-DIAGNOSING OF PRISONERS SUFFERING FROM SYMPTOMS OF SERIOUS MENTAL ILLNESS (HALLUCINATIONS, DELUSIONS, SELF HARM, SUICIDE ATTEMPTS, ETC.).

139. DEFENDANTS ARE GUILTY OF VIOLATING PLAINTIFFS' FUNDAMENTALLY IMPORTANT RIGHT TO DUE PROCESS STANDARDS OF FAIRNESS AND JUSTICE BY: DENYING THEM ACCESS TO REVIEW POLICY DC-ADM 6.5.1, SEC.4, WHICH DIRECTLY GOVERNS THEIR STGMU HOUSING. CREATING A ATYPICAL AND SIGNIFICANT HARDSHIP (LIBERTY INTEREST). DEPRIVING THEM ACCESS OF DUE AND PROPER NOTICE, REVIEWS AND RATIONALES (I.E. DC-141, PART4) PRIOR TO STGMU PLACEMENT. DEPRIVATIONS OF STG VALIDATION HEARING TO EXAMINE THE EVIDENCE USED TO RECOMMEND STGMU PLACEMENT AND THE OPPORTUNITY TO OBJECT, REBUT, CHALLENGE AND APPEAL SAID RECOMMENDATION. DEPRIVATION OF STG VALIDATION CRITERIA AND PREREQUISITES. DEPRIVATION OF A PSYCHOLOGICAL EVALUATION, TO DETERMINE IF PLAINTIFFS ARE MENTALLY HEALTHY STABLE ENOUGH TO FUNCTION AND SUSTAIN THE IMPACT OF EXTREME ISOLATION (STGMU).

140. DEFENDANTS' INACTION, OVERSIGHT, INCOMPETENCE AND FAILURE TO ADMINISTER THE PROCESS DUE TO THE PLAINTIFFS, ATTRIBUTED TO THE DRAMATIC DETERIORATION OF THEIR MENTAL HEALTH. CAUSING A ATYPICAL AND SIGNIFICANT HARDSHIP. AS A DIRECT RESULT OF SAID INACTION, OVERSIGHT, INCOMPETENCE AND FAILURE, THE 14TH AMENDMENT RIGHTS OF THE PLAINTIFFS HAVE BEEN VIOLATED, ARE BEING VIOLATED, AND WILL CONTINUE TO BE VIOLATED.

"B" SUBSTANTIVE DUE PROCESS VIOLATION OF THE 14TH AMENDMENT. ALL HEREIN NAMED DEFENDANTS ARE GUILTY

141. THE PLAINTIFFS INCORPORATES BY REFERENCE PARAGRAPHS 1 THROUGH 140 OF THIS COMPLAINT.

142. THE 14TH AMENDMENT, AS APPLIED TO THE STATES BY THE AUTHORS OF OUR CONSTITUTION, PROHIBITS DEPRIVATIONS OF SUBSTANTIVE DUE PROCESS.

143. DEFENDANTS' POLICIES, PROCEDURES, AND ROUTINE PRACTICES SYSTEMICALLY VIOLATE THE 14TH AMENDMENT RIGHTS OF THE "STGMU PRISONERS" (I.E. PLAINTIFFS). SUCH POLICIES, PROCEDURES, AND ROUTINE PRACTICES INCLUDE, WITHOUT LIMITATION:

- CONFINEMENT OF PRISONERS ON A/C STATUS, SUBJECTED TO A DEFACTO PUNITIVE STATUS (STGMU PHASE 5) DEPRIVING THEM OF THEIR A/C PRIVILEGES.
- CONTINUOUS VIOLATION OF TITLE 37 PA. ADMIN. CODE. 93.11 (B), AND DC-ADM 802, SEC. 3(A).

○ ROUTINE HOUSING INTO A "PROGRAM" (STGMU) THAT IS WELL KNOWN TO BE INACTIVE, INOPERATIVE AND THAT LACKS PROGRAMMING THEREOF.

144. DEFENDANTS ARE GUILTY OF VIOLATING PLAINTIFFS' FUNDAMENTALLY IMPORTANT RIGHT TO DUE PROCESS STANDARDS OF FAIRNESS AND JUSTICE BY: DENYING THEM ACCESS TO THEIR A/C PRIVILEGES, CONTRARY TO D.O.C. POLICY DC-ADM 802, SEC. 3 (A) (PHONE CALLS, VISITATION, COMMISSARY-FOOD, KIOSK-EMAIL, TABLET, TELEVISION, ETC.), ACCESS TO PROGRAMMING, 4 HOURS OF OUT-OF-CELL GROUP THERAPY, SOCIAL WORKERS, TREATMENT PROGRAM SPECIALIST, DRUG AND ALCOHOL COUNSELING, EDUCATION AND RELIGIOUS SERVICES.

145. DEFENDANTS' INACTION, OVERSIGHT, INCOMPETENCE AND FAILURE TO ADMINISTER THE PRO-CESS DUE TO THE PLAINTIFFS, ATTRIBUTED TO THE DRAMATIC DETERIORATION OF THEIR MENTAL HEALTH, CAUSING A ATYPICAL AND SIGNIFICANT HARDSHIP. AS A DIRECT RESULT OF SAID IN-ACTION, OVERSIGHT, INCOMPETENCE AND FAILURE, THE 14TH AMENDMENT RIGHTS OF SAID PLAI-NTIFFS HAVE BEEN VIOLATED, ARE BEING VIOLATED, AND WILL CONTINUE TO BE VIOLATED.

"C"  CRUEL AND UNUSUAL PUNISHMENT (I.E. DELIBERATE INDIFFERENCE) IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS. ALL HEREIN NAMED DEF-ENDANTS ARE GUILTY.

145. THE PLAINTIFFS INCORPORATE BY REFERENCE PARAGRAPHS 1 THROUGH 144 OF THIS COMPLAINT.

146. THE 8TH AMENDMENT, AS APPLIED TO THE STATES BY THE 14TH AMENDMENT, PROHIBITS CRUEL AND UNUSUAL PUNISHMENT (I.E. DELIBERATE INDIFFERENCE).

147. DEFENDANTS POLICIES, PROCEDURES AND ROUTINE PRACTICES SYSTEMICALLY VIOLATE THE 8TH AMENDMENT RIGHTS OF THE "STGMU PRISONERS" (I.E. PLAINTIFFS). SUCH POLICIES, PROCEDURES AND ROUTINE PRACTICES ~~OFFICES~~ INCLUDE, WITHOUT LIMITATION:

○ "PROLONGED CONFINEMENT" OF PRISONERS WITH MENTAL ILLNESS IN THE STGMU FOR CONDUCT DIRECTLY ATTRIBUTABLE TO THEIR MENTAL ILLNESS.

○ CONFINEMENT OF PRISONERS ON A/C STATUS, SUBJECTED TO A "DEFACTO" PUNITIVE STATUS THAT DEPRIVE THEM OF ALL THEIR A/C PRIVILEGES.

○ ROUTINE HOUSING INTO THE STGMU, WHERE PROGRAMMING IS INACTIVE, INOPERATIVE AND NON-EXISTENT.

○ A DISCIPLINARY SYSTEM THAT FAILS TO CONSIDER A PRISONER'S MENTAL ILLNESS AND THE IMPACT OF "PROLONG ISOLATION" (I.E. STGMU PROGRAM).

○ FAILURE TO PROVIDE MINIMALLY ADEQUATE PSYCHIATRIC AND PSYCHOLOGICAL SERVICES TO DIAGNOSE PRISONERS WITH MENTAL ILLNESS IN THE "STGMU", RESULTING IN UNNECE-SSARY PAIN AND SUFFERING.

○ MAINTENANCE OF CONDITIONS IN THE "STGMU" THAT EXACERBATE PRISONERS' MENTAL ILLNESS, INCLUDING NEAR-CONSTANT ISOLATION WITH LITTLE IF ANY HUMAN CONTACT AND PROSPECTS/AVENUES OF RELEASE; AND

○ FAILURE TO MAKE AVAILABLE, MAINTAIN AND UTILIZE ADEQUATE THERAPEUTIC ALT-ERNATIVES TO THE "STGMU".

148. DEFENDANTS KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE NUMEROUS PRI-SONERS WHO HAVE BEEN DIAGNOSED AS SUFFERING AND HAVING MENTAL ILLNESS ARE ARBITRARILY PLACED IN THE "STGMU" FOR EXTENSIVE TIME PERIODS AND SUCH CONFINEMENT IN THE "STGMU" CREATES A SUBSTANTIAL RISK THAT THOSE PRISONERS' MENTAL ILLNESSES WILL BE EXACERBATED AND THAT THEIR MENTAL HEALTH WILL DETERIORATE. DEFENDANTS ALSO KNOWS OR IS DELIBERATELY INDIFFERENT TO THE FACT THAT THE MENTAL HEALTH TREATMENT PROVIDED TO PRISONERS WITH MENTAL ILLNESS IN THE "STGMU" IS INADEQUATE AND RESULTS IN THE EXACERBATION OR UNNECESSARY PROLONGATION OF PRISONERS' MENTAL ILLNESSES. THE IMPACT OF LONG-TERM ISOLATION IN THE "STGMU", AND MIS-PLACEMENT THEREOF, HAVE BEEN BROUGHT TO THE DEFENDANTS' ATTENTION THROUGH NUMEROUS PRI-SONERS GRIEVANCES, 802 APPEALS, REQUEST SLIPS, LETTERS, COMMUNICATIONS WITH PRISONERS' RIGHTS ADVOCACY ORGANIZATIONS AND THE LIKE. NONETHELESS, THE DEFENDANTS HAS "REFUSED" TO TAKE REASONABLE STEPS TO CORRECT THIS SYSTEMIC VIOLATION OF THE PLAINTIFFS' RIGHTS (I.E. STGMU PRISONERS).

149. DEFENDANTS HAS ACTED, OR FAILED TO ACT, WITH DELIBERATE INDIFFERENCE TO THE HEALTH AND SAFETY OF THE PLAINTIFFS ~~WHO~~ WITH MENTAL ILLNESS. AS A DIRECT RESULT OF THEIR ACTS AND OMISSIONS, THE 8TH AMENDMENT RIGHTS OF SAID PLAINTIFFS HAVE BEEN VIOLATED, ARE BEING VIOLATED, AND WILL CONTINUED TO BE VIOLATED.

"D"  ( RETALIATION IN VIOLATION OF THE 1ST, 8TH & 14TH AMENDMENT.
       DEFENDANTS ARMEL AND HIS SUBORDINATES ARE GUILTY. )

150. THE PLAINTIFFS INCORPORATES BY REFERENCE PARAGRAPHS 1 THROUGH 149 OF THIS COMPLAINT.

151. THE 1ST AMENDMENT, AS APPLIED TO THE STATES BY THE 14TH AMENDMENT, PROHIBITS RETALIATION.

152. DEFENDANTS ARE GUILTY OF RETALIATION BY: THEIR ACTS, OMISSIONS AND DIRECT THREATS OF/ PROMISE OF STARVATION, MAIL TAMPERING, DEPRIVATION OF YARD, PROPERTY, LAW LIBRARY, SHOWERS, 802 APPEALS, GRIEVANCES AND VISITATIONS ALONG WITH ALL A/C PRIVILEGES, THREATS OF ASSAULT BY OC SPRAY AND PROLONG ISOLATION/INDEFINATE CONFINEMENT (i.e. RRL); DEFENDANTS MADE SUCH THREATS AND ACTED OUT, PERFORMED AND INSTITUTED SAID ACTIONS IN RESPONSE TO THE PLAINTIFFS PROTECTED RIGHTS OF ACCESS TO THE COURTS. TO BE "FREE" FROM CRUEL AND UNUSUAL PUNISHMENT, IS AN IMPLIED PROMISE AND IS TO BE ADMINISTERED ROUTINELY, WITHOUT SALE, BY DEFENDANTS, TO NO AVAIL.

153. AS A DIRECT AND PROXIMATE RESULT OF DEFENDANTS RETALITORY ACTS, OMISSIONS AND DIRECT THREATS, THE 1ST, 8TH & 14TH AMENDMENT RIGHTS OF THE PLAINTIFFS HAVE BEEN VIOLATED, ARE BEING VIOL- ATED, AND WILL CONTINUE TO BE VIOLATED.

"E"  ( DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF
       TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA).
       ALL HEREIN NAMED DEFENDANTS ARE GUILTY. )

154. THE PLAINTIFFS INCORPORATES BY REFERENCE PARAGRAPHS 1 THROUGH 153 OF THIS COMPLAINT.

155. THE ADA, AS APPLIED TO THE STATES BY THE 8TH AND 14TH AMENDMENT, PROHIBITS DISCRIMIN- ATION AND FAILURES TO ACCOMMODATE.

156. TITLE II OF THE ADA REQUIRES ANY STATE GOVERNMENT DENYING A QUALIFIED INDIVIDUAL WITH A DISABILITY AN EQUAL OPPORTUNITY TO BENEFIT FROM THE FULL RANGE OF OPPORTUNITIES AVAILABLE TO OTHERS.

157. AT ALL TIMES RELEVANT, PLAINTIFFS WAS RENDERED DISABLED AS DEFINED BY THE ADA, DUE TO THEIR DESCRIBED MENTAL AND PHYSICAL IMPAIRMENTS THAT SIGNIFICANTLY RESTRICTED THEIR MAJOR LIFE FUNCTIONS AND ACTIVITIES. PLAINTIFFS COULD PERFORM, PARTICIPATE AND ENJOY CERTAIN FUNCTIONS, ACTIVITIES, PROGRAMS, SERVICES, ETC., WITH REASONABLE ACCOMMO- DATIONS FROM THE DEFENDANTS. INSTEAD OF ACCOMMODATING PLAINTIFFS' CONDITIONS, THE DEFENDANTS SUBJECTED PLAINTIFFS TO DIFFERENTIAL TREATMENT AND ADVERSE ACTIONS AS OUT- LINED ABOVE IN THE COURSE OF THEIR STGMU PLACEMENT/HOUSING IN VIOLATION OF THE ADA.

158. PLAINTIFFS ARE CONTINUOUSLY BEING DEPRIVED OF A/C PRIVILEGES, CERTAIN FUNCTIONS, ACTIVITIES, PROGRAMS, TREATMENT SERVICES, GROUPS, ETC., AS OUTLINED ABOVE, BECAUSE OF THEIR DISABILITIES AND THE EFFECTS/IMPACT THEREOF. SIMILARLY SITUATED NON- DISABLED PRISONERS ARE NOT SUBJECT TO THE SAME TREATMENT/MIS-TREATMENT. DEFENDANTS ALLOW AND FURNISH (ACCOMMODATE) SIMILARLY SITUATED NON-DISABLED PRISONERS WHO HAS NO SECURITY LEVEL LOWER THAN THE PLAINTIFFS, ACCESS TO SAID ENTITLEMENTS.

159. AS A DIRECT AND PROXIMATE RESULT OF DEFENDANTS ADA DEPRIVATION, THE 8TH AND 14TH AMENDMENT RIGHTS OF THE PLAINTIFFS HAVE BEEN VIOLATED, ARE BEING VIOLATED, AND WILL CONTINUE TO BE VIOLATED.

"F"  ( NEGLIGENCE. ALL HEREIN NAMED DEFENDANTS ARE GUILTY. )

160. THE PLAINTIFFS INCORPORATES BY REFERENCE PARAGRAPHS 1 THROUGH 159 OF THIS COMPLAINT.

161. DEFENDANTS ARE GUILTY OF NEGLIGENCE BY: ACTING OUTSIDE AND/OR WITHIN THE SCOPE OF THEIR EMPLOYMENT, WHEN RECKLESSLY DISREGARDING THE SAFE, SECURE, CARE, CUSTODY, CONTROL AND WELFARE OF THE PLAINTIFFS, WHILE HAVING DOMINION OVER THEIR PERSONAL PROPERTY ITEMS. AS A DIRECT RESULT, SUCH WAS LOSS, STOLEN OR DESTROYED.

# VI. RELIEF:

162. THE PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT:

A. EXERCISE JURISDICTION OVER THIS ACTION.

B. ISSUE APPROPRIATE DECLARATORY RELIEF AND INJUNCTIVE RELIEF TO STOP THE CONSTITUTIONAL VIOLATIONS DESCRIBED ABOVE AND TO ENSURE THAT THE PLAINTIFFS RECEIVE CONSTITUTIONALLY ADEQUATE MENTAL HEALTH CARE AND THE APPROPRIATE STABILITY "D" CODE THAT MATCHES THEIR SYMPTOMS OF SERIOUS MENTAL ILLNESS AND IMMEDIATE RELEASE TO GENERAL POPULATION.

C. AWARD REASONABLE ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS PURSUANT TO 42 U.S.C. § 1988.

D. AWARD PLAINTIFFS: $12,000,000.00 (TWELVE MILLION DOLLARS) IN COMPENSATORY DAMAGES, AGAINST ALL DEFENDANTS.

E. AWARD PLAINTIFFS: $108,000,000.00 (ONE HUNDRED AND EIGHT MILLION DOLLARS) IN PUNITIVE DAMAGES, AGAINST ALL DEFENDANTS; AND

F. GRANT SUCH OTHER RELIEF AS MAY BE APPROPRIATE.

DATE: 10/24/2022

IN TRUTH BY THE SPIRIT OF
MAAT
☥
EXECUTED BY:

/s/
XAVIAR PAGAN #KW-8620

/s/
RONNIE E. JOHNSON #DZ-3092

/s/ Courtney Duncan
COURTNEY DUNCAN #LZ-8062

/s/
KAREEM MAZYCK #NW-3714

/s/ Angel Maldonado
ANGEL MALDONADO #HS-6238

/s/
T. MONTANA BELL #LD-5447

/s/ J.M. Scullen
MICHAEL SCULLEN #KF-6696

@ SCI-FAYETTE, 50 OVERLOOK DRIVE.
LABELLE, PA 15450.

22.

## VERIFICATION

IT IS VERIFIED AND DECLARED UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: 10 / 24 / 22

/S/

T. MONTANA BELL, ON BEHALF OF MYSELF AND NAMED ~~PARTIES~~. PLAINTIFFS.

## CERTIFICATE OF SERVICE.

IT IS CERTIFIED THAT THE FOREGOING COMPLAINT-CLASS-ACTION IS BEING FORWARDED /FURNISHED UPON :

CLERK'S OFFICE
U.S. DIST. COURT.
WESTERN DIST. OF PA.
700 GRANT ST., RM. 3110
PITTSBURGH, PA 15219

(PRIORITY MAIL)

CC:
ALL NAMED DEFENDANTS AND,
JOSH SHAPIRO, ESQ
ATTORNEY GENERAL.

DATE: 10 /24 /22

/S/

T. MONTANA BELL, ON BEHALF OF MYSELF AND NAMED PLAINTIFFS