IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| T. MONTANA BELL, RONNIE E. JOHNSON, ANGEL MALDONADO, KAREEM MAZYCK, and XAVIER PAGAN, on their own behalf and on behalf of all others similarly situated, | : : : | |
| Plaintiffs, | : | Case No. 2:22-cv-01516-CRE |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO DOC DEFENANTS' MOTION FOR MENTAL HEALTH EXAMINATIONS**

Plaintiffs T. Montana Bell, Ronnie E. Johnson, Angel Maldonado, Kareem Mazyck, and Xaiver Pagan ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Partial Opposition to Department of Corrections (DOC) Defendants' Motion for Mental Health Examinations pursuant to Federal Rule of Civil Procedure 35. Plaintiffs oppose the request of Defendants Pennsylvania Department of Corrections, Laurel Harry, Christopher Oppman, Trevor Wingard, James Barnacle, Lucas Malishchak, Tina Walker, Eric Armel, and Scott Riddle ("DOC Defendants") for mental examinations of Plaintiffs without counsel present and without video recording the examinations.

## INTRODUCTION

Plaintiffs are five individuals representing a class of people who were confined at SCI Fayette in the Security Threat Group Management Unit ("SGTMU"), a solitary confinement unit.

1

While in near constant isolation in the STGMU, Plaintiffs were subjected to inhumane conditions which caused or exacerbated their mental health conditions. Plaintiffs were subject to these constitutionally inadequate conditions without *any* notice of why they were identified as a member of a Security Threat Group or *any* opportunity to dispute the placement. Given DOC Defendants' documented practice of causing or exacerbating Plaintiffs' mental health conditions, Plaintiffs made the modest requests that Plaintiffs' counsel be permitted to attend mental health examinations and that the exams be audio and video recorded. Plaintiffs' counsel informed Defendants' counsel of this position, and Defendants' counsel subsequently filed a Motion for Mental Health Evaluation of Plaintiffs. Simultaneous with this brief in opposition to DOC Defendants' Motion, Plaintiffs are filing a Motion for a Protective Order. Prior to filing that Motion for Protective Order, Plaintiff's counsel requested a meeting with Defendants' counsel to see if the parties could come to a resolution. Counsel for the parties discussed their respective positions regarding the conditions of the proposed mental health examinations during a telephone conference on Monday, June 24, and were not able to come to an agreement on the presence of Plaintiffs' counsel or the recording of the examinations. Therefore, Plaintiffs submit this Brief in Partial Opposition to DOC Defendants' Motion for Mental Health Examinations.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

At the time of filing this action, Plaintiff Montana Bell had spent almost two years in the Security Threat Group Management Unit ("STGMU") which included 18 months in the STGMU's Phase 5, the most restrictive phase of the STGMU program. Second Amended Complaint, ECF No. 75 ("SAC"), ¶¶ 157-181. Plaintiff Ronnie Johnson has been incarcerated for nearly 25 years. *Id*. at ¶ 186. During that time, he spent approximately 16 years in solitary confinement, including a year in the STGMU. *Id*. at ¶¶ 187-188. Plaintiff Angel Maldonado has spent two and a half years

in the STGMU and more than three consecutive years in solitary confinement even though at the time of filing the second amended complaint, he has not gotten a single misconduct in three years. *Id*. at ¶¶ 219-232. Plaintiff Xavier Pagan has spent eight years in solitary confinement including three and a half years in the STGMU. *Id*. at ¶¶ 268-269.

While in the STGMU, each plaintiff was confined in a small cell for at least 22 hours a day without sufficient access to recreational opportunities, educational or rehabilitation programming, and adequate mental health screenings and care. *Id*. at ¶ 5. Plaintiffs lacked any access to adequate mental health care with most mental health visits being done through "drive-by" visits where providers would speak through the food slot or crack in the cell door, often for only a few seconds, non-confidentially. *Id*. at ¶¶ 148-155. While the STGMU was purportedly a phased program—permitting inmates to progress from Phase 5 to Phase 1 and return to general population—the program had no transparency and Plaintiffs and similarly situated class members had little guidance on when or how they could or would progress. *Id*. at ¶¶ 5, 77-88.

Plaintiffs have extensive histories and currently experience psychiatric diagnoses, adverse psychological symptoms, have been or are prescribed serious psychotropic medications, and suffered severe psychological harm due to their prolonged solitary confinement in the Pennsylvania Department of Corrections (DOC), including their time in the STGMU. Montana Bell had been diagnosed with anxiety, anti-social personality disorder, depression, and Post-Traumatic Stress Disorder (PTSD) prior to his placement in the STGMU, is prescribed Buspar and Haldol, and has attempted suicide at least ten times while in solitary confinement the two years prior to the filing of the second amended complaint. *Id*. at ¶¶ 159-160, 163. Ronnie Johnson has been diagnosed with anxiety, depression, adjustment disorder, impulse control disorder, and bipolar affective disorder, underwent multiple psychiatric evaluations as a child, and has attempted

3

suicide on at least four separate occasions in DOC custody, and decompensated so severely while in the STGMU that he smeared feces on his body and his cell window. *Id*. at ¶¶ 189-92, 213. After years in solitary confinement, Angel Maldonado was diagnosed with depression and anxiety, has been prescribed Remeron, Paxil, Vistaril, Celexa and Zyprexa, experienced auditory hallucinations, and attempted suicide while in the STGMU. *Id*. at 220-221, 249. At one point in the STGMU, Mr. Maldonado began punchning the walls until he bled, and then wrote on the wall in his own blood, "Kill me, I'm ready to go." *Id*. at 248. Kareem Mazyck was diagnosed with anxiety, insomnia, adjustment disorder, was prescribed Remeron, and experienced paranoia, depression, delusional tendencies, mood swings, and auditory hallucinations while in the STGMU. *Id*. at 255-256, 263. While in DOC custody, Xavier Pagan has been diagnosed with anxiety, PTSD, extreme depression, schizophrenia, has experienced hallucinations and attempted suicide, including while in the STGMU. *Id*. at ¶ 270, 286.

On October 27, 2022, Plaintiffs brought this action *pro se* on behalf of themselves and other similarly situated individuals. Compl., ECF No. 1-1. After undersigned counsel entered their appearances, Plaintiffs filed the operative pleading, the Second Amended Complaint, on September 29, 2023. Defendants filed Answers, and discovery is ongoing. *See generally* ECF Nos. 95, 96, 123. The horrific conditions of the STGMU and its total lack of transparency violated Plaintiffs' rights under the Eighth Amendment, the Fourteenth Amendment, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. SAC ¶¶ 309-333. Plaintiffs seek injunctive and monetary relief. *Id*., Prayer for Relief.

DOC Defendants now seek to compel virtual psychological examinations of Plaintiffs pursuant Fed. R. Civ. P. 35. DOC Defendants' Motion to Conduct Expert Mental Health Examination, ECF No. 118, ("Ds' Motion"). Plaintiffs generally *do not oppose* DOC Defendants'

request for psychological examinations. Plaintiffs *only* request that the examinations (1) occur in the presence of an attorney for Plaintiffs who will join via Zoom conference with their camera and microphone turned off, and (2) be video recorded. These modest requests would not impact the integrity of the examinations, would assure Plaintiffs have a fair opportunity to fully evaluate the methods used by DOC Defendants' experts, and would give Plaintiffs needed and reasonable assurance that the DOC Defendants' mental health exams are being conducted appropriately. As such, Plaintiffs are asking the court to only partial grant DOC Defendants' Motion, and are simultaneously requesting via another motion to grant a limited protective order, pursuant to Fed. R. Civ. P. 26(c), allowing Plaintiffs' counsel to be present at and to video record Defendants' psychological examinations of Plaintiffs.

**ARGUMENT**

I. **There is good cause to permit Plaintiffs' counsel to attend the virtual examinations.**

There is good cause to allow counsel's presence due to the examinations' adversarial nature and Plaintiffs' histories of mental illness and prolonged solitary confinement. Further, allowing counsel to be present virtually while muted and with their webcam off will not impact the examination. Importantly, Pennsylvania law, which allows the presence of counsel for equivalent examinations, is instructive where the federal rules are silent.

Rule 26(c) of the Federal Rules of Civil Procedure allows a court to "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). District Courts, including those in the Third Circuit, have permitted counsel or the examinee's own medical personnel to be present during a Rule 35 examination when an examination was intertwined with the adversarial process and there was a risk the doctor would "interrogate the plaintiff on liability questions in order to seek damaging admissions." *Cristino v. Berkshire Life Ins. Co. of Am.*, 2011 WL 13151979 at *2 (D.N.J. Oct. 6,

2011); *see also Smith v. HCSC-Blood Ctr., Inc.*, 2010 WL 11474404 (E.D. Pa. May 18, 2010) (allowing the presence of counsel during Rule 35 examinations); *Showell v. Trump Taj Mahal Casino*, 2000 WL 1514108, at *1 (E.D. Pa. Oct. 11, 2000) (same).

Here, the examinations are clearly adversarial in nature, which is sufficient to justify Plaintiffs' counsel's presence. *Showell*, 2000 WL 1514108, at *1. The complaint alleges that DOC Defendants swept Plaintiffs into the STGMU without any basis or due process and without regard to their mental conditions. DOC Defendants then ignored Plaintiffs' mental conditions and signs of decompensation and failed to provide desperately needed mental health screening and treatment, causing Plaintiffs severe psychological harm. *See, e.g.*, SAC ¶¶ 57-72, 159, 217, 250, 263, 287. The DOC Defendants "dispute the nature and extent of [Plaintiffs' mental illness]." Defs.' Mem. at 3, ECF No. 119. The purpose of these evaluations is "to defend against the specific claims made by Plaintiffs and the extent of the alleged emotional injuries," *id.*, and "to determine whether the named Plaintiffs' placement and/or confinement to the STGMU was responsible for causing or exacerbating mental health issues." *Id.* at 4. As such, the requested examinations are adversarial in nature. And, since, "counsel for plaintiffs, in general, should be permitted to attend an independent medical examination that takes place in an adversarial context—even when the examination is not physical in nature," *Showell*, 2000 U.S. Dist. LEXIS 14736, at *1, Plaintiffs' counsel should be permitted to attend.

Here, the specific and somewhat unusual circumstances of this case provide additional good cause for allowing the presence of Plaintiffs' counsel. Counsel's presence is essential to facilitate the integrity and efficacy of psychological evaluations in this context in light of Plaintiffs' prolonged periods of incarceration, years of solitary confinement, and mental health conditions,

all of which present serious challenges to their trusting and meaningfully participating in evaluations conducted by an expert in the employ of Defendants.

Further, the presence of counsel here does not pose a danger of interfering with the examination. Conditioning counsel's presence on remaining silent and out of sight resolves any concerns of disruption. In *Showell*, the court permitted the physical presence of plaintiffs' counsel despite the defendants' claim that counsel's presence would interfere with the examination. *Id*. The court found that concerns of disruption were minimized by the fact that counsel was required to "sit in such a position that his client is unable to see him." *Id*. In this case, DOC Defendants are asking for a virtual examination. To be invisible and mute to the examinee, all counsel must do is turn their camera and microphone off. Once they do this, there is no risk of disruption.

Finally, Rule 35 is silent on the presence of counsel during examinations. Thus, some district courts in the Third Circuit have looked to state law for guidance. *See Cristino,* 2011 WL 13151979, at *2 (looking to New Jersey's practice of allowing the presence of counsel during examinations because Rule 35 is silent on the matter); *Gensbauer v. May Dept. Stores Co.,* 184 F.R.D. 552, 553 (E.D.Pa. 1999). (looking to the Pennsylvania rule because the "federal rule is silent on the matter."). Pennsylvania Rule of Civil Procedure 4010(a)(4)(i) gives examinees the right to have counsel present at an examination. PA. R. Civ. P. 4010(a)(4)(i). As there is good cause for a protective order permitting the presence of counsel, there is no risk of disrupting the examination, and Pennsylvania law provides guidance encouraging the presence of counsel, the Court should grant Plaintiffs' request to permit counsel to attend the psychological examinations.

II. **Plaintiffs' Motion To Require Video And Audio Recording Of The Psychological Examinations Should Be Granted**

There is good cause for this court to permit video recordings of the examinations because psychological examinations rely on physical observations that can only be verified through video.

Further, the conditions of confinement during the interview can have a significant impact on the accuracy of the examination and as such, they should be documented. Generally, Courts have discretion to permit a Rule 35 examination to be video recorded. *See Matchett v. Nelson-Hughes*, No. CV 2022-43, 2024 WL 1994046, at *6 (D.V.I. May 6, 2024) (ordering a Plaintiff's neuropsychological to be video recorded). As discussed in section one, Rule 26(c) allows the court to issue protective orders for "good cause." Fed. R. Civ. P. 26(c). In *Matchett v. Nelson-Hughes*, the court allowed video recording of the plaintiff's neuropsychological exam for good cause. *See id.* at *3-5, 10-11. The court found that video recording had little effect on the exam's integrity and concerns about the examinee's memory issues constituted good cause because a video recording would provide "an accurate, dispute-free version' of what happened." *Id.* at *5 (cleaned up).

That Plaintiffs in the case *sub judice* have alleged facts giving rise to comparable concerns with the memory issues identified as good cause in *Matchett* can be gleaned from the Second Amended Complaint as well as controlling Third Circuit precedent recognizing the "scientific consensus on the harms and risks of solitary confinement. *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 566 (3d Cir. 2017). Quoting at length from a "comprehensive meta-analysis of the existing literature on solitary confinement," the Third Circuit noted that "all [individuals subjected to solitary confinement] will ... experience a degree of stupor, difficulties with thinking and concentration, obsessional thinking, agitation, irritability, and difficulty tolerating external stimuli." *Id*. The Court continued to detail the severity of the harms:

> Anxiety and panic are common side effects. Depression, post-traumatic stress disorder, psychosis, hallucinations, paranoia, claustrophobia, and suicidal ideation are also frequent results. Additional studies included in the aforementioned meta-analysis further "underscored the importance of social contact for the creation and

> maintenance of 'self.'" In other words, in the absence of interaction with others, an individual's very identity is at risk of disintegration.

*Id*. This profound and enduring destabilization of a person's psychology and sense of self warrants the provision of the slight, non-intrusive safeguards sought by Plaintiffs to safeguard the integrity and accuracy of the proposed mental health evaluations.

Here, DOC Defendants argue that Rule 35 and the adversarial process provide Plaintiffs sufficient safeguards. Defs.' Mem. at 9, ECF No. 119. We respectfully disagree. As noted in *Matchett*, "many [errors] could not be discovered absent [a] recording." *Matchett*, 2024 2024 WL 1994046, at *5. Psychological examinations often rely on observing mannerisms, facial expressions, and body language, making video recording crucial for Plaintiffs to evaluate the accuracy of their assessments. *See e.g.*, Am. Psych. Ass'n, APA Guidelines for Psychological Assessment and Evaluation 17 (2020) ("Individual performance on psychological tests is only one piece of assessment and is conceptualized in [a broader] context . . . includ[ing]. . . observation of behavior."). Physical constraints such as shackles can make the interviewee uncomfortable, causing increased irritation. *See* Rachel C. Rock. Clayton Shealy & Martin Sellbom, *Factors to Consider in Evaluating the Appropriateness of Restraints During Forensic Evaluations*, 25 Psychiatry, Psych. & L. 779, 781 (2018) ("[E]xaminees may re-experience adverse emotional effects from previous trauma if they are forced to wear restraints during forensic evaluations."); Nat'l Inst. Corr., Effective Prison Mental Health Services: Guidelines to Expand and Improve Treatment 42 (2004) ("[M]any inmates . . . may have suffered from a history of abuse and trauma and may be retraumatized when secluded and restrained."); *see also* Am. Psych. Ass'n, APA Guidelines for Psychological Assessment and Evaluation 17 (2020) ("Psychologists should strive to be aware of situation-specific behavior and to address the possibility or variable functioning based on setting."). Audio recordings alone are insufficient to capture these potential

complications. Without video recordings, Plaintiffs are deprived of a vital means to verify the integrity and thoroughness of the psychological evaluations conducted. Plaintiffs have suffered intense and lasting psychological damage, which will be the precise subject of the mental health evaluations sought by Defendants, carrying an obvious risk that revisiting the experience can result in disputes over the content and interpretation of the examination. As such, there is good cause for the Court to require video recording.

Finally, DOC Defendants' claim that video recording imposes a cost burden is inaccurate—there is no additional cost for video recording on video conferencing software. Defs.' Br. at 8, ECF No. 119. The difference between creating a video and an audio recording is merely the push of a button. *See Enabling and Starting Local Recordings*, Zoom (Nov. 20, 2023, 9:24 AM), https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063640#:~:text=Local%20recording%20is%20available%20to,audio%20locally%20to%20a%20computer ("Local recording is available to free and paid subscribers. Local recording allows participants to record meeting video and audio locally to a computer.").

Accordingly, Plaintiffs' request that the psychological evaluations be video recorded should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court issue an order preventing DOC Defendants' from conducting mental examinations of Plaintiffs without the presence of counsel and without video and audio recording.

Respectfully submitted,

Bret Grote, Esquire
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
bretgrote@abolitionistlawcenter.org
*Counsel for Plaintiffs*

Nia Holston, Esquire
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
nia@alcenter.org
*Counsel for Plaintiffs*

Rupalee Rashatwar, Esq.
Abolitionist Law Center
631 N. 12th Street
Philadelphia, PA 19123
rupalee@alcenter.org
*Counsel for Plaintiffs*

Will W. Sachse, Esq.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
will.sachse@dechert.com
*Counsel for Plaintiffs*

Matthew A. Feldman, Esq.
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
mfeldman@pilp.org
*Counsel for Plaintiffs*

Alexandra Morgan-Kurtz, Esq.
Pennsylvania Institutional Law Project
247 Fort Pitt Blvd., 4th Floor
Pittsburgh, PA 15222
amorgan-kurtz@pilp.org
*Counsel for Plaintiffs*

Noah S. Becker, Esq.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
noah.becker@dechert.com
*Counsel for Plaintiffs*

Stormie B. Mauck, Esq.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
stormie.mauck@dechert.com
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| T. MONTANA BELL, RONNIE E. JOHNSON, ANGEL MALDONADO, KAREEM MAZYCK, and XAVIER PAGAN, on their own behalf and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : | Case No. 2:22-cv-01516-CRE |
| v. | : | |
|  | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

    I, Bret Grote, hereby certify that on June 25, 2024, I caused to be served a true and correct copy of the foregoing document titled Motion For Protective Order to the following:

Lindsey A. Bedell, Assistant Counsel
Attorney ID #308158
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
Phone: 717-728-7763
Email: lbedell@pa.gov

Counsel for DOC Defendants


Cassidy L. Neal, Esq.
Attorney ID # 311979
Baum O'Connor Cullen Chmiel
912 Fort Duquene Blvd
Pittsburgh, PA 15222
(412) 338-4750

Counsel for Peter Saavedra, Defendant

/s/ Bret Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
bretgrote@abolitionistlawcenter.org
*Counsel for Plaintiffs*