# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | |
|---|---|
| T. MONTANA BELL, RONNIE E. JOHNSON, ANGEL MALDONADO, KAREEM MAZYCK, and XAVIAR PAGAN, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., <br><br> Defendants. | Civil Action No. 2:22-cv-01516-CBB <br><br> CHRISTOPHER B. BROWN <br> United States Magistrate Judge |

**MEMORANDUM ORDER**

## I.   Introduction

Presently before the Court are two related motions: the Motion for Mental Examination of Plaintiffs filed by the Corrections Defendants (ECF No. 118) and the Motion for Protective Order filed by Plaintiffs (ECF No. 125). The motions have been fully briefed and are ripe for consideration.[1]

---

[1] The relevant filings are: The Corrections Defendants Motion for Mental Examination of Plaintiffs (ECF No. 118), the Declaration of Dr. Ryan Quirk (ECF No. 118-1), the brief in support of the Motion for Mental Examination (ECF No. 119), and Plaintiffs' Memorandum of Law in Partial Opposition to the Motion for Mental Examination (ECF No. 127).

Plaintiffs' Motion for Protective Order (ECF No. 125), the brief in support of the Motion for Protective Order (ECF No. 128), the Corrections Defendants' response in opposition (ECF No. 131), Defendant Saavedra's Response to the Motion for Protective Order (ECF No. 132), and Plaintiffs' Reply Brief (ECF No. 137).

Courts seek to strike a balance between the ability of the physician to conduct an examination free of distractions and unnecessary intrusions, and the plaintiff's right to be protected from improper procedures or questioning. Balancing these considerations, as well as consideration of the parties' arguments, the case law relied upon by the parties, and the Court's independent research, the Motion for Mental Examination of Plaintiffs will be granted and the Motion for Protective Order will be denied.

## II.   Background

This is a putative class action brought by five named individuals on their own behalf and on behalf of all others similarly situated. Their allegations relate to the use of the Security Threat Group Management Unit ("STGMU") at SCI-Fayette. According to Plaintiffs, the STGMU held 30 to 50 men at any given time in indefinite solitary confinement. Plaintiffs allege that their prolonged social isolation and the denial of adequate mental health treatment led to aggravation of existing mental illnesses and development of new, likely permanent, psychological injuries, as well as frequent acts of self-harm and suicide attempts.

The parties dispute the nature and extent of the mental health conditions of each named Plaintiff, any exacerbation of those conditions, and any causal connections asserted by Plaintiffs.

## III.   The Motions

The Corrections Defendants seek to have an expert in psychology, Ryan Quirk, Ph.D., conduct a comprehensive and individual mental health examination

of the five named Plaintiffs.  (ECF No. 118).   Plaintiffs generally are not challenging this request.  (ECF No. 127).

That said, Plaintiffs have moved for a protective order (ECF No. 125) asking the Court to allow (1) Plaintiffs' counsel to be present during the video examinations and (2) the examinations to be audio and video recorded.  The Corrections Defendants oppose both requests.  (ECF No. 131).  They have submitted a declaration from their expert psychologist, Dr. Ryan Quirk, outlining why a request for the presence of a third party is inappropriate.  (ECF No. 118-1).  The Corrections Defendants also state that Dr. Quirk does not consent to being recorded.  (ECF No. 131).  Alternatively, the Corrections Defendants argue that if Plaintiffs' counsel is permitted to be present, defense counsel also must be permitted to be present, an argument Plaintiffs do not oppose.  Co-Defendant Dr. Peter Saavedra has joined in the Corrections Defendants' opposition to Plaintiffs' motion for a protective order and also requests that if the Court permits Plaintiffs' attorneys to observe the examinations, then the Court also permit Dr. Saavedra's attorney to observe.  (ECF No. 132).

**IV.    Legal Standards**

    A.    <u>Physical and Mental Examinations</u>

Federal Rule of Civil Procedure 35(a) governs physical or mental examinations of parties.  It grants courts discretionary authority to order a party "whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."  Fed.R.Civ.P.

35(a)(1). Courts will order an examination "for good cause shown." The burden of demonstrating good cause rests with the moving party. Once the right to take a Rule 35 examination has been established, the burden then shifts to the party seeking the participation of an observer at the examination to demonstrate "good cause," or special circumstances, for the third party's presence.

      B.    <u>Protective Orders</u>

Federal Rule of Civil Procedure 26(c)(1) permits a party from whom discovery is sought to move for a protective order. The court may, for good cause shown, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including designating the persons who may be present while the discovery is conducted. Fed.R.Civ.P. 26(c)(1). The court has almost complete discretion in determining what constitutes "good cause," and such determinations are rarely disturbed on appeal. In general, a court should balance the need of the party seeking the discovery against the burden on the party responding. The party seeking the protective order has the burden of showing that good cause exists by stating particular and specific facts.

**V.**    **Discussion**

      A.    <u>The Corrections Defendants' Motion for Mental Examination</u>

The Corrections Defendants seek to have an expert conduct psychological examinations of the five named Plaintiffs. The examinations would be in a one-on-one, face-to-face setting through virtual means and would last up to four hours.

4

There is no dispute that Plaintiffs' mental health conditions are "in controversy" and Plaintiffs' counsel does not dispute the appropriateness of a Rule 35 psychological examination. Rather, Plaintiffs seek to impose certain conditions on the examinations, which requests are addressed below. The Court finds that the Corrections Defendants have established good cause. The burden now shifts to Plaintiffs to show "good cause," or special circumstances, for counsel to be present during the examinations and for the examinations to be recorded.

B.     Plaintiffs' Motion for Protective Order

While Plaintiffs generally agree to the examinations, they have asked the Court to exercise its discretion and regulate two procedural aspects of the psychological examinations of the Plaintiffs: (1) to allow Plaintiffs' counsel to be present during the examinations and (2) to allow the examinations to be recorded.

At the outset, the Court notes there is no controlling precedent in the Third Circuit on either of these requests. Further, none of the cases cited by the parties involve a situation akin to what is at issue – i.e., the examinations of incarcerated individuals.[2]

Plaintiffs argue that because Rule 35 is silent on the presence of counsel, the Court should look to Pennsylvania Rule of Civil Procedure 4010 for guidance, the

---

[2] T. Montano Bell is currently housed in the Intensive Management Unit at SCI Phoenix, Ronnie Johnson is currently housed in general population at SCI Houtzdale, Angel Maldonado is currently housed in general population at SCI Camp Hill, and Xavier Pagan is currently housed in general population at SCI Fayette. Kareem Mazyk was released from DOC custody on December 23, 2022. All five named plaintiffs were incarcerated in the STGMU at SCI Fayette when the initial complaint here was filed. (ECF No. 131, pp.1-2).

5

state counterpart to Federal Rule 35, which permits counsel for a party to attend a mental examination.[3] The Court finds this argument to be unpersuasive.[4] At least three courts within the Third Circuit have declined to follow Pennsylvania Rule 4010 in favor of the prevailing federal practice under Rule 35 of excluding third party observers. *See, e.g., Smolko v. Unimark v. Lowboy Trans.*, LLC, 327 F.R.D. 59, 63 (M.D. Pa. 2018); *King v. Mansfield Univ. of Pennsylvania*, No. 1:11-CV-1112, 2014 WL 563323, at *3 n. 1 (M.D. Pa. Feb. 11, 2014); *M.S. v. Cedar Bridge Acad.*, No. 1:08-CV-2271, 2011 WL 1838885, at *4 (M.D. Pa. May 13, 2011). The Court finds the reasoning of these sister courts to be sound and will likewise decline to follow Pennsylvania Rule of Civil Procedure 4010.

The Court now turns to Plaintiffs' arguments that special circumstances and good cause exist for the granting of their request for a Protective Order.

---

[3] Rule 4010(4)(i) provides "The person to be examined shall have the right to have counsel or other representative present during the examination" and subsection 5(i) provides "[t]he party who is being examined . . . may have made upon reasonable notice and at the party's expense a stenographic or audio recording of the examination."

[4] In support of this argument, Plaintiff's rely on *Gensbauer v. May Depart. Stores Co.*, 184 F.R.D. 552 (E.D. Pa. 1999) (finding Rule 4010 persuasive authority for the proposition that counsel should be present at these examinations). (ECF No. 127). An important distinction, however, exists between *Gensbauer* and the instant case. *Gensbauer* was a diversity case and plaintiff's cause of action arose purely under state law. Here, this case is federal question case, not a diversity case, and Plaintiffs' causes of action arise purely from allegations of constitutional violations and violations of federal statutes.

A.   The Request of Plaintiffs' Counsel to Attend the Examinations

While the Court of Appeals for the Third Circuit has not weighed in on this issue, the "majority rule" adopted by federal courts, including those in the Third Circuit, is that the court may, and often should, exclude third-party observers, including counsel, from medical or psychiatric evaluations, absent special circumstances.[5] *See King v. Mansfield Univ. of Pennsylvania*, Civil No.: 1:11-cv-1112, 2014 WL 563323, at *3 (M.D. Pa. 2014) ("While Rule 35 does not, by its terms, specify who may attend such a psychiatric examination, the majority rule adopted by federal courts, including those in the Third Circuit, is that the court should exclude third-party observers, including counsel, from medical or psychiatric evaluations.").

Courts have declined to permit a third-party observer or recording device where the requester's argument is based on the inherently adversarial nature of the examination, the fact that the examiner was selected by opposing counsel, or the fear that the examination will become a de facto deposition. *Cato v. Twp. of Andover*, Civil Act. No. 16-4605, 2018 WL 1639692, *3 (D.N.J. 2018). Courts have further declined requests where the argument is based on the theoretical potential for misconduct, *id.,* and the desire to obtain an accurate account. *Cato*, 2018 WL 1639692, *4.

---

[5]  Special circumstances have been found where the examinee is a minor, does not speak the relevant language, or suffers from a disability that might impair his or her ability to communicate to counsel what occurs during the examination. *In re UV Logistics, LLC*, 682 S.W.3d 612, 623 (Tex. App. 2023) (collecting cases).

7

Plaintiffs argue special circumstances and good cause exists to allow counsel's presence at the depositions because:

> (1) counsel's presence is necessary due to the adversarial nature of the examinations and Plaintiffs' histories of mental illness and prolonged solitary confinement. Memo. at 5 (ECF No. 127);[6] and
>
> (2) counsel's presence will not interfere with the examinations as counsel will be "passive observers" with both their cameras and microphones turned off and counsel will not interfere during the examination.

The Corrections Defendants respond that litigation is "inherently adversarial" and "[i]t is clear that Plaintiffs' counsel intends to take some sort of participatory role in the evaluation, which undermines the private nature of the evaluation and inserts adversity into what is supposed to be a controlled evaluation by a licensed psychologist." Defs' resp. at 6.

Starting with the presumption against the presence of third persons at psychological examinations, and after considering Plaintiffs' arguments that special circumstances and good cause exists, and balancing the needs of the Defendants in seeking these depositions against the burden on Plaintiffs, *see M.S. v. Cedar Bridge Military Acad.*, Civil Act. No. 1:08-cv-2271, 2011 WL 1838885 (M.D. Pa. May 13, 2011) (collecting cases), the Court will follow the majority rule adopted by federal courts, including those in the Third Circuit:

---

[6] Plaintiffs argue that counsel's presence is essential "in light of Plaintiffs' prolonged periods of incarceration, years of solitary confinement and mental health conditions, all of which present serious challenges to their trusting and meaningfully participating in evaluations conducted by an expert in the employ of Defendants." (ECF No. 128); *see also* Reply Brief (ECF No. 137).

> [T]he need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and exam[] thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry. *See Jacob v. Chaplin*, 625 N.E.2d 486, 492 (Ind. App. 1993). Additionally, it is recognized that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient. *Tomlin v. Holecek et al.*, 150 F.R.D. 628, 632 (D. Minn. 1993); *Cline v. Firestone*, 118 F.R.D. 588, 589 (S.D.W. Va. 1988); *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543, 544 (S.D.N.Y. 1978); *Swift v. Swift*, 64 F.R.D. 440, 443 (E.D.N.Y. 1974). The Court finds that the presence of an observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

*Smolko v. Unimark Lowboy Trans.*, LLC, 327 F.R.D. 59, 61-62 (M.D. Pa. 2018) (quoting *Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68, 71 (E.D. Pa. 1996)). *See also Cato v. Twp. of Andover*, Civil Act. No. 16-4605, 2018 WL 1639692, *3 (D.N.J. 2018); *R.D. v. Shohola Camp Ground and Resort,* Civil No. 3:16-cv-1056, 2017 WL 1036475, *1 (M.D. Pa. Mar. 17, 2017).  The Court finds that there are sufficient safeguards to ensure fairness and validity: the individual plaintiffs will have personal knowledge of how the examinations were conducted, the examiner is required to provide an expert report to Plaintiffs' counsel, Plaintiffs' counsel will have the opportunity to depose the examiner and cross-examine the examiner at trial, and Plaintiffs have the opportunity to arrange for psychological examinations by their own expert(s) and can submit contrary evidence. *See Cristino v. Berkshire Life Ins. Co. of Am.*, Civil Action No. 10-3506, 2011 WL 13151979, at *2 (D.N.J. 2011) (noting that "many federal courts have held that the presence of a third party

or recording device . . . subverts the purpose of Rule 35" because each party is on equal footing since they can conduct their own evaluation without interference from the other.).

Thus, Plaintiff's request for counsel to be present during the psychological examinations will be denied.

B. The Request for the Examinations To Be Recorded

Plaintiffs make two arguments in support of their request that the examinations be video and audio recorded: (1) psychological exams rely on physical observations that can be verified only through video and (2) there is no additional cost for video recording. The Corrections Defendants respond that Plaintiffs have not shown that a specific need exists for recording and recording places undue burdens on Corrections Defendants. Corr. Defs' Response at 10 (ECF No. 131).[7]

The Court finds that Plaintiffs have not met their burden to show special circumstances or good cause exists for the recording of the examinations. "Trust between examiner and examinee is one of the essential underpinnings of valid and reliable testing." *Matchett v. Nelson-Hughes*, Civil No. 2022-43, 2024 WL 1994046, at *4 (D.V.I. May 6, 2024). The Court finds that the recording of the examinations will be distracting and impede the one-on-one communication between Plaintiffs and the examiner. Again, counsel will receive a copy of the expert report and will

---

[7] The Court notes that to the extent the Corrections Defendants' arguments presume that all class members will be examined, the class has not been certified yet and the only examinations at issue presently are the examinations of the five named Plaintiffs.

have the opportunity to challenge any alleged gaps in integrity and accuracy. Further, Plaintiffs may seek to exclude all or part of the expert's report, and will have the opportunity to introduce contrary expert evidence. Thus, Plaintiff's request for the examinations to be recorded will be denied.

For all these reasons, the Motion for Mental Examination will be granted and the Motion for Protective Order will be denied. An appropriate Order follows.

## ORDER

**AND NOW**, this 5th day of August, 2024, it is hereby **ORDERED** as follows:

1. The Corrections Defendants' Motion for Mental Examination is **GRANTED**. Defendants' expert psychologist is permitted to perform individual mental examinations of Plaintiffs Bell, Johnson, Maldonado, Mazyck, and Pagan, consistent with Federal Rule of Civil Procedure 35.

The examination will be conducted via a face-to-face virtual interview, and containing questions within the usual scope of medical practice for the purpose of assessing Plaintiffs' overall mental health. Each examination shall not exceed four (4) hours.

2. Plaintiffs' Motion for Protective Order is **DENIED**. No counsel are permitted to be present for the examinations and the examinations shall not be audio or video recorded.

BY THE COURT:
s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge